## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **In re** | ) | **Case No. 19-13253** |
| | ) | |
| **Offshore Marine Contractors, Inc.,** | ) | **Chapter 11** |
| | ) | |
| **Debtor.** | ) | **Section B** |
| | ) | |
| | ) | **Expedited** |

## MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING AND APPROVING POST-PETITION SECURED FINANCING AND AUTHORITY TO USE CASH COLLATERAL

Offshore Marine Contractors, Inc. (the "Debtor") files this motion (the "Motion"), pursuant to sections 105, 363 and 364 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "Bankruptcy Code"), as supplemented by Rules 2002, 4001 and 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule IX of the *General Order Regarding Procedures for Complex Chapter 11 Cases* for the for use in the Bankruptcy Court in the Eastern District of Louisiana (the "Complex Chapter 11 Case Rules"), for entry of (i) an interim order, substantially in the form annexed hereto as **Exhibit 1**, and (ii) a final order authorizing and approving post-petition secured financing, and to use cash collateral. In support of the Motion, the Debtor submits the Declaration of Raimy Eymard in Support of First Day Motions and Applications (the "Eymard Declaration")[1] filed contemporaneously herewith and incorporated herein by reference, and represents as follows:

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Eymard Declaration.

## I.    CONCISE STATEMENT OF RELIEF REQUESTED

1.      By this motion, the Debtor seeks to obtain interim debtor-in-possession financing ("Initial Financing") through entry of an interim order: (i) authorizing the Debtor to maintain and service on a post-petition basis, existing secured term loans from Mississippi River Bank (the "DIP Lender") through the existing term loan agreements (collectively, the "MRB Term Loan Agreements") attached hereto as **Exhibit 2**; (ii) authorizing the Debtor to maintain and service on a post-petition basis, its existing revolving loan from the DIP Lender through the existing revolving loan agreement (the "MRB Revolving Loan Agreement") attached hereto as **Exhibit 3**, (iii) authorizing the Debtor to perform under that letter agreement dated December 4, 2019 ("MRB Letter Agreement"), attached hereto as **Exhibit 4**, modifying the MRB Term Loan Agreements and MRB Revolving Loan Agreement in connection with the Debtor's bankruptcy, and providing for a secured credit facility (the MRB Term Loan Agreements, the MRB Revolving Loan Agreement, and the MRB Letter Agreement are collectively referred to herein as the  "DIP Facility") (iv) confirming and authorizing a pre- and post-petition lien on the Debtor's accounts in order to secure amounts due under the DIP Facility; (v) authorizing the use of the DIP Facility and cash collateral by the Debtor pursuant to 11 U.S.C. §363(c) in accordance with that portion of the thirteen (13) week cash flow budget (the "Financing Budget") attached hereto as **Exhibit 5** necessary to provide for the Debtor's financing requirements prior to the final hearing to consider financing through use of cash collateral and/or debtor-in-possession financing in accordance with 11 U.S.C. §§ 363 and 364 and Bankruptcy Rule 4001 (the "Final Financing Hearing"); and (vi) setting the date for the Final Financing Hearing.

2.      The salient terms of the DIP Facility are as follows:[2]

| Borrower | Offshore Marine Contractors, Inc. |
|---|---|
| Lender: | Mississippi River Bank |
| Amount: | Maximum amount of $2,000,000.00, with draw limit a 80% of eligible Debtor accounts receivable (through the MRB Revolving Loan Agreement) |
| Facility Use and Proceeds: | A line of credit utilized for operating costs in accordance with the DIP Budget. |
| Application of Proceeds: | The Debtor is only permitted to make payments consistent with the DIP Budget (with a variance in the aggregate of 10%) |
| Interest Rate: | Variable rate at 4.75% over index rate, currently totaling 9.75% |
| Security: | Various assets of Debtor, including without limitation, pre and post-petition accounts receivable (however, as to any additional collateral not already acting as collateral for the MRB Term and MRB Revolving Loan Agreements, Debtor proposes to grant only a security interest in pre- and post-petition accounts receivable in addition to any property already securing other DIP Lender obligations. |
| Payment and Term: | Payment of accrued interest via sweep of Debtor bank account for deposit of Debtor account receivable collections; Payment of all principal and interest by June 2, 2021, subject to rate adjustment and payment of a 1% annual origination fee on June 2, 2020.  Debtor to maintain payments on MRB Term Loan Agreements pending confirmation of a plan. |
| Events of Default: | Breach of MRB Term Loan Agreements and MRB Revolving Loan Agreement, as modified by the MRB Letter Agreement |
| Adequate protection for Prepetition Lenders: | Prepetition lenders shall be granted a replacement lien, to the same priority and extent as existed pre-petition, in post-petition generated cash and receivables, up to the amount of diminution caused by the use of cash collateral. |

---

[2] This is a summary based upon the DIP Facility (copies attached).  As such, this summary is qualified in its entirety by reference to the provisions of that agreement.  The DIP Facility will control in the event of any inconsistency between it and this motion.

3.     This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of this case and this motion is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.     The statutory predicates for the relief requested herein are 11 U.S.C. §§ 105, 363 and 364 and FED. R. BANKR. P. 2002, 4001 and 6003.

## III.     BACKGROUND

5.     This case was commenced on December 4, 2019 by the filing of voluntary petition under Chapter 11 of the Bankruptcy Code (the "Petition Date").  The Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.  No trustee or examiner has been requested or appointed, and no official committee of creditors or equity interest holders has been established.

6.     The Debtor, headquartered in Cutoff, Louisiana, provides state of the art offshore, self-propelled, self-elevating liftboats for the petroleum exploration and transportation industries. OMCI offers 175, 200 and 215 classed liftboats, all of which are equipped with modern lifting equipment, electronics, navigation, propulsion, as well as experienced employees, and are capable of working at depths of up to 172 feet and crane capacities up to 175 tons.

7.     Additional background facts on the Debtor, including an overview of the Debtor's business, information on the Debtor's debt structure and information on the events leading up to the bankruptcy are contained in the Eymard Declaration.

8.     As of the Petition Date, the Debtor was indebted to the DIP Lender in the amount of $3,335,263.71 as to the MRB Term Loans, and $546,152.61 as to the MRB Revolving Loan.

9.     As security on its indebtedness to the DIP Lender, public records show the following.

10.     According to abstracts obtained from the United States Coast Guard, DIP Lender holds second priority ship mortgages in the amount of $50,000,000.00 on the following  self-propelled, self-elevating liftboats:  (i) L/B Tobie Eymard; (ii) L/B Raimy Eymard; and L/B Lacie Eymard.

11.     According to a search of the uniform commercial code filings in Louisiana (the proper location for perfection of UCC security interests against the estate), the DIP Lender has a security interest in Push Tug "LAZ37035H180", Houseboat "OMC", and all Inventory, Accounts and Equipment.  Review by undersigned counsel indicates that DIP Lender's security interest in Accounts is first priority.

12.     Further, according to an abstract of public records in the Parish of LaFourche, DIP Lender has a second priority mortgage on immovable property and improvements owned by Debtor located in Cutoff, Louisiana.

13.     After review of all the above-listed sources, DIP Lender holds a first priority security interest in Debtor's accounts receivable, inventory and equipment.   In addition, Bluehenge Capital Secured Debt SBIC, L.P. ("Bluehenge") holds a second priority security interest in certain of Debtor's accounts receivable, namely those arising out of the operation of the following vessels owned by the Debtor: Tobie Eymard, Olivia Grace, Lacie G. Eymard, Michael Eymard and Lucas Bourg.

14.     As of the Petition Date, the Debtor seeks to continue to utilize the MRB Revolving Loan to operate its business.  Under the MRB Revolving Loan, the DIP Lender will fund advances up to a maximum amount of $2,000,000.00, with draw limit at 80% of eligible Debtor accounts receivable.  As the proposed structure of the post-petition funding is to continue the ongoing relationship under the terms of the agreements in place (as modified by the MRB Letter Agreement), Debtor's borrowing availability will be reduced by the pre-petition balance owed as

of the Petition Date. However, collections of pre-petition accounts receivable will reduce that balance and free up potential additional availability as the Debtor generates new, eligible accounts receivable.

15. The DIP Lender has agreed to continue funding with the Debtor post-petition, under the terms of the Letter Agreement, which provides that the DIP Lender will continue to make advances under the MRB Revolving Loan Agreement, provided that: (i) the Debtor is not in default of its obligations under the MRB Revolving Loan or the MRB Term Loan Agreement, subject to the DIP Lender agreeing in the MRB Letter Agreement that the Debtor's bankruptcy shall not be deemed a default, (ii) all advances under the MRB Revolving Loan Agreement will be secured by pre-petition and post-petition accounts of the Debtor, and (iii) Debtor pays monthly payments of $39,100.00 (the amount of the MRB Term Loan monthly payment) post-petition through confirmation or termination of this Agreement. As a condition of providing post-petition funding availability MRB requires the Debtor to remain current on payments due MRB under the MRB Term Loan. Debtor believes, in its business judgment, that access to capital borrowings necessary to fund operations is worth the minimal cost associated with maintenance of the MRB Term Loan during the course of the DIP Facility.

## IV. RELIEF REQUESTED

16. By this motion, the Debtor requests authority to continue borrowing under the DIP Facility, by which the DIP Lender will provide a post-petition loan to the Debtor up to a total amount of $2,000,000.00 on an interim basis; *provided*, *however*, that the Debtor shall use the proceeds of the DIP Facility solely in compliance with the Financing Budget, which includes the ability to make payments to its vendors, the MRB Term Loan payment, and administrative expenses shown therein.

17.     Lender has agreed to provide the requested DIP Facility in accordance the Financing Budget, for: (i) operational expenses of the Debtor and its business; (ii) service of the MRB Term Loans; and (iii) other costs and expenses of administration of these chapter 11 cases.

18.     Without the DIP Facility, the Debtor may be unable to pay its necessary payroll and other operating expenses and operate the Debtor's business as a going concern in a manner that will avoid irreparable harm to the Debtor's estate.

19.     The DIP Facility is conditioned upon the grant of pre and post-petition first priority security interest in all of Debtor's accounts, and continued servicing of the MRB Term Loans.

## V.      BASIS FOR RELIEF REQUESTED

20.     Pursuant to sections 364(c)(2) of the Bankruptcy Code, the Debtor requests that the Court authorize the Debtor to enter into the DIP Facility, which will provide for funds necessary for the preservation and maintenance of the Debtor's assets and operations, including to provide for payroll, insurance, and other basic operating expenses, all subject to the Financing Budget.

21.     In evaluating whether to approve the DIP Facility, Courts consider whether the debtor is able to obtain unsecured credit, whether the transaction is necessary to preserve the value of the estate, and whether the terms are fair and reasonable under the circumstances.[3]

22.     The Debtor has determined that it is unable to obtain alternative financing as it is significantly over-leveraged and lacking in the cash flow to amortize such a loan.  The Debtor submits that obtaining the requested financing is necessary to preserve the value of the Debtor's business and maximize the value of the assets and business to allow for an orderly reorganization.

---

[3] *In re L.A. Dodgers, LLC*, 457 B.R. 308, 312-12 (Bankr. D. Del. 2011).  *See also In re Garland Corp.*, 6 B.R. 456, 461 (B.A.P. 1st Cir. 1980) (secured credit under 11 U.S.C. § 364(c)(2) is authorized, after notice and a hearing, upon showing that unsecured credit cannot be obtained).

23.     Without the DIP Facility, the Debtor may be unable to pay its necessary payroll and other operating expenses, and obtain goods and services needed to preserve and operate the Debtor's business in a manner that will avoid irreparable harm to the Debtor's estate.

24.     The terms of the DIP Facility have been negotiated in good faith and at arm's length among the Debtor and DIP Lender.  Even considering the requirement that Debtor continue to service the MRB Term Loans, the terms of the DIP Facility are more favorable to the Debtor than those typically available (if any) from alternative sources, under all of the circumstances.  Given the current market conditions and under the particular circumstances of this chapter 11 case, there are no other sources of funding.  Given the exigencies of the case, the Debtor believes the DIP Facility is the best and only option.  Provided that the relief request requested herein does not run afoul of the provisions of and policies underlying the Bankruptcy Code, courts grant considerable deference in acting in accordance with its business judgment.[4]

25.     The Debtor has made a good faith effort to obtain alternative financing on equal or better terms, and has not succeeded.  It has become clear from such efforts that it is highly unlikely that any lender would provide credit on an unsecured or secured basis, and the Debtor believes it has satisfied the good faith requirement to obtain credit.[5]  Thus, "[t]he statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable."[6]

---

[4] *See, e.g., Bray v. Shenandoah Fed. Sav. & Facility Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986) (approving debtor in possession financing necessary to sustain seasonable business); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("cases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest.")

[5] *Snowshoe Co.*, 789 F.2d at 1088.

[6] *Id.*; *see also Ames*, 115 B.R. at 40 (holding that the debtor made a reasonable effort to secure financing when it selected the least onerous financing option from the remaining two lenders).

26.     The terms and conditions of the DIP Facility are fair and reasonable and were negotiated by the parties in good faith and at arms' length.  Accordingly, the Lender should be accorded the benefits of 11 U.S.C. § 364(e) in respect of the DIP Facility.

27.     Under Rule IX of the Complex Chapter 11 Case Rules, the Debtor highlights provisions of its Financing Motion and proposed interim order submitted pursuant to 11 U.S.C. §§ 363 and 362 that contain the following:

[*Chart continued to following page.*]

| | |
|---|---|
| **Sale or plan confirmation milestones:** | None |
| **Cross-collateralization protection (other than replacement liens) to the prepetition secured creditors (i.e., clauses that secured prepetition debt by post-petition assets in which the secured creditors would not otherwise have a security interest by virtue of its prepetition security agreement or applicable law):** | None. |
| **Provisions or findings of fact that bind the estate or other parties in interest with respect to the validity, perfection, or amount of the secured creditor's prepetition lien or the waiver of claims against the secured creditor without first giving parties in interest at least seventy-five (75) days from the entry of the Order and the official creditors' committee, if formed, at least sixty (60) days from the date of its formation to investigate such matters:** | None. |
| **Provisions that seek to waive, with or without notice, whatever rights the estates may have under 11 U.S.C. § 506(c):** | None. |
| **Roll-ups:** | Monthly payment of MRB Term Loan in the sum of $39,100.00. |
| **Default provisions and remedies:** | Only those provided in the pre-petition agreements, with a waiver of any *ipso facto* default clause pertaining to the filing of bankruptcy. |

| | |
|---|---|
| **Releases of claims against lender or others**: | None. |
| **Limitation on fees for advisors to official committees**: | None. |
| **Priming liens**: | None. |
| **Provisions that seek to affect the Court's power to consider the equities of the case under 11 U.S.C. § 552(b)(1)**: | None. |
| **Any other provision that limits the ability of estate fiduciaries to fulfill their duties under the Bankruptcy Code and applicable law**: | None. |

28.     It is essential to the Debtor's successful reorganization and the going concern value of its businesses that they have sufficient funds to operate in the ordinary course, and at a level that is on par with their pre-petition performance. Absent the use of cash collateral (in conjunction with the DIP Facility), the Debtor may not have sufficient working capital to (a) make payments to employees, vendors, or suppliers, (b) satisfy ordinary operating costs, and (c) fund the administrative costs of this chapter 11 case.

## VI.     ADEQUATE PROTECTION

29.     As set forth above, Bluehenge holds a second priority pre-petition security interest in certain of the Debtor's pre-petition accounts. The DIP Lender's first priority lien in pre-petition accounts will continue for all loans made under the DIP Facility.  However, the Debtor proposes to provide adequate protection to Bluehenge by means of a replacement lien in the same priority and extent as existed pre-petition on post-petition generated accounts receivable, with such liens

to accrue on a rolling basis as receivables are collected and used in accordance with the Financing Budget.

30.     The Bankruptcy Code does not explicitly define "adequate protection," but does provide a nonexclusive list of the means by which a debtor-in-possession may provide adequate protection, including (i) periodic cash payments, (ii) additional or replacement liens, or (iii) other relief resulting in the "indubitable equivalent" of the secured creditor's interest in such property.[7]

31.     What constitutes adequate protection must, therefore, be decided on a case-by-case basis.[8]  The focus of the requirement is to protect a secured creditor from diminution in the value of its interest in that particular collateral during the period of use.[9]

32.     Based upon the replacement liens (and the fact that the Debtor will be able to obtain credit to supplement and enhance its ability to generate new receivables), the Debtor submits that Bluehenge will be adequately protected

## VII.   NOTICE

33.     Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) those persons who have formally appeared and requested notice of service in this proceeding pursuant to Bankruptcy Rules 2002 and 3017; (iii) counsel for and the members of any committees appointed by this Court; (iv) all lenders, including the DIP Lender, identified in this motion; (v) the twenty largest unsecured creditors, and (vi) all creditors on the Debtor's mailing list.  In light of the nature of the relief requested, and the exigent circumstances of these cases, the Debtor submits that no further notice is necessary.

---

[7] 11 U.S.C. § 361.

[8] *See, e.g., In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996); *see also, In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir. 1987); *In re Martin*, 761 F.2d 472 (8th Cir. 1985).

[9] *See Central Park Avenue Corp.*, 136 B.R. at 631; *In re Beker Indus. Corp.*, 58 B.R. at 736; *In re Hubbard Power & Light*, 202 B.R. 680 (Bankr. E.D.N.Y. 1996).

## VIII.   NO PRIOR REQUEST AND INTERIM RELIEF

34.     No previous request for the relief sought herein has been made by the Debtor to this or any other court.

35.     The Debtor hereby requests that this Court grant on an interim basis that Initial Financing necessary to allow the Debtor to sustain operations until such time as a final hearing can be heard.  The Debtor must be able to use its cash and borrow funds to operate during the period prior to final hearing and will suffer irreparable harm if interim relief is not granted.  The Debtor therefore requests authority to borrow from and use the cash collateral of MRB in accordance with the Financing Budget through the date this Court schedules final hearing on this Motion.

**WHEREFORE**, the Debtor respectfully requests that the Court: (i) enter an order granting the relief requested herein on an interim basis; (ii) schedule a final hearing on the Motion as soon as practicable; and (iii) provide such other relief as the Court deems appropriate and just.

Respectfully Submitted,

**STEWART ROBBINS BROWN & ALTAZAN LLC**
301 Main Street, Suite 1640
P. O. Box 2348
Baton Rouge, LA  70821-2348
(225) 231-9998 Telephone
(225) 709-9467 Fax

By:     /s/ Paul Douglas Stewart, Jr.
Paul Douglas Stewart, Jr. (La. #24661)
Brandon A. Brown (La. #25592)
Brooke W. Altazan (La. #32796)

***Proposed Counsel for Offshore Marine Contractors, Inc.***

# EXHIBIT 1

# PROPOSED ORDER

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **In re** | ) | **Case No. 19-13253** |
| | ) | |
| **Offshore Marine Contractors, Inc.,** | ) | **Chapter 11** |
| | ) | |
| **Debtor.** | ) | **Section B** |
| | ) | |
| | ) | **Expedited** |

**[PROPOSED] INTERIM ORDER AUTHORIZING AND
APPROVING POST-PETITION SECURED INITIAL FINANCING
<u>AND AUTHORITY TO USE CASH COLLATERAL</u>**

**THIS MATTER** having come before the Court on [••] [••], 201[•] (the "<u>Initial Financing</u> <u>Hearing</u>") upon the motion (the "<u>DIP and Cash Collateral Motion</u>") of the debtor and debtor in possession (the "<u>Debtor</u>") in the above-captioned Chapter 11 case (the "<u>Case</u>") pursuant to sections 101, 105, 361, 363, 364, 365, and 507 of title 11 of the United States Code, Rules 2002, 4001, 6003 and 9014 and Rule IX of the *General Order Regarding Procedures for Complex Chapter 11 Cases* for the for use in the Bankruptcy Court in the Eastern District of Louisiana seeking entry of an interim order (this "<u>Interim Order</u>"), *inter alia*: (i) authorizing the Debtor to maintain and service on a post-petition basis, existing secured term loans from Mississippi River Bank (the "<u>DIP</u> <u>Lender</u>") through the existing term loan agreements (collectively, the "<u>MRB Term Loan</u> <u>Agreements</u>") attached to the DIP and Cash Collateral Motion; (ii) authorizing the Debtor to maintain and service on a post-petition basis, the existing revolving loan from the DIP Lender through the existing revolving loan agreement (the "<u>MRB Revolving Loan Agreement</u>") attached to the DIP and Cash Collateral Motion; (iii) authorizing the Debtor to perform under that letter agreement dated December 4, 2019 ("<u>MRB Letter Agreement</u>"), attached to the DIP and Cash Collateral Motion modifying the MRB Term Loan Agreements and MRB Revolving Loan Agreement in connection with the Debtor's bankruptcy, and providing for a secured credit facility

(the MRB Term Loan Agreements, the MRB Revolving Loan Agreement, and the MRB Letter Agreement are collectively referred to herein as the "DIP Facility") (iv) confirming and authorizing a pre and post petition lien on the Debtor's accounts in order to secure amounts due under the DIP Facility; (v) authorizing the use of the DIP Facility and cash collateral by the Debtor pursuant to 11 U.S.C. §363(c) in accordance with the thirteen (13) week cash flow budget (the "Financing Budget") attached hereto as **Exhibit A** (vi) modifying the automatic stay to the extent necessary to allow the Debtor and its lender to implement the provisions of any order authorizing financing, and finally; (vii) fixing a final hearing on this Motion (the "Final Hearing").

The Court having considered the DIP and Cash Collateral Motion, the exhibits attached thereto, and the evidence submitted or adduced and the arguments of counsel made at the interim hearing; and notice of the Initial Financing Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d), and 9014; and it appearing to the Court that granting the interim relief requested is necessary to avoid immediate and irreparable harm to the Debtor and its estate pending the Final Hearing, and is otherwise fair and reasonable and in the best interests of the Debtor, its estate, and its creditors and equity holders, and is essential for the continued operation of the Debtor's business; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED** that:

1.      The DIP and Cash Collateral Motion is **GRANTED** on an interim basis.

2.      All objections to the DIP and Cash Collateral Motion not otherwise withdrawn are overruled.

3.      Pending the Final Hearing, and on an interim basis, the Debtor is authorized to enter into and use the DIP Facility with the DIP Lender, providing for loans of up to $2,000,000.00 upon

entry of this Interim Order (the "<u>DIP Facility Commitment</u>"), to finance working capital, professional fees and for other corporate purposes of the Debtor.

4.      Pending the Final Hearing, and subject to the terms and conditions set forth in the DIP Facility and this Interim Order and in order to prevent immediate and irreparable harm to the Debtor's estate, the Debtor is authorized to request extensions of credit of up to the amount of the DIP Facility Commitment at any one time outstanding under the DIP Facility.

5.      Debtor is authorized to use the proceeds of the DIP Facility up to the DIP Facility Commitment in accordance with the Financing Budget, as such Financing Budget may be revised or amended with the consent of the DIP Lender.

6.      Debtor is authorized to use cash collateral in accordance with this Interim Order and the Financing Budget.

7.      The DIP Lender is hereby granted a first priority security interest and lien in and to the Debtor's accounts, both pre-petition and post-petition in order to secure all advances under the DIP Facility.

8.      Bluehenge Capital Secured Debt SBIC, L.P. is hereby granted a security interest and lien in and to the Debtor's post-petition accounts, in the same priority and extent as such liens existed in its favor pre-petition.

9.      Debtor is authorized to execute and enter into the MRB Letter Agreement and to perform under the DIP Facility, and to perform such other and further acts as may be required thereby.

10.     The occurrence of an "Event of Default" under the DIP Facility, as set forth therein, shall constitute an event of default under this Interim Order, unless waived in writing by the DIP Lender (the "<u>Event of Default</u>").

11.     The DIP Facility and this interim order may from time to time be amended, modified, or supplemented by the parties thereto without notice or a hearing if: (a) the amendment,

modification, or supplement is (i) in accordance with the DIP Facility; (ii) beneficial to the Debtors; and (iii) not prejudicial in any material respect to the rights of third parties; (b) a copy of the amendment, modification or supplement is provided to counsel for any statutory committee and the U.S. Trustee; and (c) the amendment, modification or supplement is filed with the Court; provided, however, that consent of any statutory committee or of the U.S. Trustee, and approval of the Court are not necessary to effectuate any such amendment, modification or supplement. Except as otherwise provided in this paragraph, no waiver, modification, supplement or amendment of any of the provisions of any DIP Facility shall be effective unless signed by both the Debtor and DIP Lender and approved by the Court on notice.

12.     Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

13.     The Debtor expressly stipulates, and the Court finds and adjudicates that, the DIP Obligations shall not be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless the DIP Obligations have been paid in full in cash on or before the effective date of a confirmed plan of reorganization.

14.     Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of the Debtor, the DIP Lender, all other creditors of the Debtors, any Statutory Committee or any other court appointed committee appointed in the Case, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in the Case, any Successor Case, or upon dismissal of the Case or any Successor Case.

15.    The Financing Budget may be amended or modified in writing from time to time only with the written consent of the DIP Lender and without the need for approval by the Court.

16.    The automatic stay imposed under section 362 is modified to the extent necessary to permit the Debtors and the DIP Lender to implement the terms of the DIP Facility and this Interim Order, but not to enforce any remedies following a declaration of default by the DIP Lender.

17.    The provisions of this Interim Order, and any and all actions taken pursuant hereto, shall survive entry of any order which may be entered in the Case or a Successor Case, or pursuant to which this Court abstains from hearing the Case or any Successor Case.

18.    The Final Hearing shall be held on [••] [••], 201[•] at [••]:**00 [•]m (Prevailing Central Time)**, or as soon thereafter as counsel may be heard, before the Honorable Jerry A. Brown, United States Bankruptcy Judge, in the United States Bankruptcy Court for the Eastern District of Louisiana, on authorizing the balance of the borrowings under the DIP Facility and authorizing the Debtor to use Cash Collateral in accordance with the Financing Budget on a final basis.

19.    Debtor shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "Final Hearing Notice"), on all parties listed on its mailing list and all parties that it noticed of the Initial Financing Hearing.

20.    The Final Hearing Notice shall state that responses or objections, if any, to the entry of the Final Order shall be filed with this Court and served, so as to be actually received no later than [••] [••], 201[•]**at 5:00 p.m. (Prevailing Central Time)** (the "Objection Deadline") on: (i) the Debtor, c/o Stewart Robbins Brown & Altazan, LLC, 301 Main Street, Suite 1640, Baton Rouge, LA 70801 (Attn:  Paul Douglas Stewart, Jr., Esq.); (ii) the DIP Lender; (iii) counsel to the Committee, if any, and (iv) the Office of the United States Trustee for the Eastern District of Louisiana, Texaco Center, Suite 2110, 400 Poydras Street, New Orleans, LA. 70130.

21.     The Court has and will retain jurisdiction to enforce this Interim Order according to its

terms.

# EXHIBIT 2

# MRB Term Loan Agreements

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $1,100,030.00 | 05-24-2018 | 06-02-2019 | 0001 | 83 | 50507558 | MOC | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**  OFFSHORE MARINE CONTRACTORS, INC. (TIN:
72-1446077)
133 W. 113TH STREET
CUT OFF, LA 70345

**Lender:**  MISSISSIPPI RIVER BANK
MAIN OFFICE BRANCH-MOC
POST OFFICE BOX 607
BELLE CHASSE, LA 70037

**Principal Amount: $1,100,030.00**                                **Date of Note: May 24, 2018**

**PROMISE TO PAY.** OFFSHORE MARINE CONTRACTORS, INC. ("Borrower") promises to pay to the order of MISSISSIPPI RIVER BANK ("Lender"), in lawful money of the United States of America the sum of One Million One Hundred Thousand Thirty & 00/100 Dollars (U.S. $1,100,030.00), together with simple interest assessed on the unpaid principal balance of this Note as outstanding from time to time, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 3.250% per annum based on a year of 360 days, commencing on May 24, 2018, and continuing until this Note is paid in full.

**PAYMENT.** Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, Borrower will pay this loan in one principal payment of One Million One Hundred Thousand Thirty & 00/100 Dollars ($1,100,030.00) due on June 2, 2019. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning July 2, 2018, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any unpaid collection costs; then to any late charges; then to any accrued unpaid interest; and then to principal. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in this Note.

**PREPAYMENT.** Other than Borrower's obligation to pay any prepayment penalty, Borrower may prepay this Note in full at any time by paying the then unpaid principal balance of this Note, plus accrued simple interest and any unpaid late charges through date of prepayment. If Borrower prepays this Note in full, or if Lender accelerates payment, Borrower understands that, unless otherwise required by law, any prepaid fees or charges will not be subject to rebate and will be earned by Lender at the time this Note is signed. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: MISSISSIPPI RIVER BANK, MAIN OFFICE BRANCH-MOC, POST OFFICE BOX 607, BELLE CHASSE, LA 70037.

**LATE CHARGE.** If Borrower fails to pay any payment under this Note in full within 10 days of when due, Borrower agrees to pay Lender a late payment fee in an amount equal to 5.000% of the unpaid portion of the regularly scheduled payment or $100.00, whichever is greater. Late charges will not be assessed following declaration of default and acceleration of the maturity of this Note.

**INTEREST AFTER DEFAULT.** If Lender declares this Note to be in default, Lender has the right prospectively to adjust and fix the simple interest rate under this Note until this Note is paid in full, as follows: (A) If the original principal amount of this Note is $250,000 or less, the fixed default interest rate shall be equal to eighteen (18%) percent per annum based on a year of 360 days, or three (3%) percent per annum in excess of the interest rate under this Note, whichever is greater. (B) If the original principal amount of this Note is more than $250,000, the fixed default interest rate shall be equal to twenty-one (21%) percent per annum based on a year of 360 days, or three (3%) percent per annum in excess of the interest rate under this Note at the time of default, whichever is greater.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Default Under Security Agreements.** Should Borrower or any guarantor violate, or fail to comply fully with any of the terms and conditions of, or default under any security right, instrument, document, or agreement directly or indirectly securing repayment of this Note.

**Other Defaults in Favor of Lender.** Should Borrower or any guarantor of this Note default under any other loan, extension of credit, security right, instrument, document, or agreement, or obligation in favor of Lender.

**Default in Favor of Third Parties.** Should Borrower or any guarantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may affect any property or other collateral directly or indirectly securing repayment of this Note.

**Insolvency.** Should the suspension, failure or insolvency, however evidenced, of Borrower or any Guarantor of this Note occur or exist.

**Death or Interdiction.** Should any guarantor of this Note die or be interdicted.

**Readjustment of Indebtedness.** Should proceedings for readjustment of indebtedness, reorganization, bankruptcy, composition or extension under any insolvency law be brought by or against Borrower or any guarantor.

**Assignment for Benefit of Creditors.** Should Borrower or any guarantor file proceedings for a respite or make a general assignment for the benefit of creditors.

**Receivership.** Should a receiver of all or any part of Borrower's property, or the property of any guarantor, be applied for or appointed.

**Dissolution Proceedings.** Proceedings for the dissolution or appointment of a liquidator of Borrower or any guarantor are commenced.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Material Adverse Change.** Should any material adverse change occur in the financial condition of Borrower or any guarantor of this Note or should any material discrepancy exist between the financial statements submitted by Borrower or any guarantor and the actual financial condition of Borrower or such guarantor.

**Insecurity.** Lender in good faith believes itself insecure with respect to this Note.

**LENDER'S RIGHTS UPON DEFAULT.** Should any one or more default events occur or exist under this Note as provided above, Lender shall have the right, at Lender's sole option, to declare formally this Note to be in default and to accelerate the maturity and insist upon immediate payment in full of the unpaid principal balance then outstanding under this Note, plus accrued interest, together with reasonable attorneys' fees, costs, expenses and other fees and charges as provided herein. Lender shall have the further right, again at Lender's sole option, to declare formal default and to accelerate the maturity and to insist upon immediate payment in full of each and every other loan, extension of credit, debt, liability and/or obligation of every nature and kind that Borrower may then owe to Lender, whether direct or indirect or by way of assignment, and whether absolute or contingent, liquidated or unliquidated, voluntary or involuntary, determined or undetermined, secured or unsecured, whether Borrower is obligated alone or with others on a "solidary" or "joint and several" basis, as a principal obligor or otherwise, all without further notice or demand, unless Lender shall otherwise elect.

**ATTORNEYS' FEES; EXPENSES.** If Lender refers this Note to an attorney for collection, or files suit against Borrower to collect this Note, or if Borrower files for bankruptcy or other relief from creditors, Borrower agrees to pay Lender's reasonable attorneys' fees.

**WAIVE JURY.** BORROWER AND LENDER HEREBY WAIVE THE RIGHT TO ANY JURY TRIAL IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM BROUGHT BY EITHER BORROWER OR LENDER AGAINST THE OTHER.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Louisiana without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Louisiana.

**DEPOSIT ACCOUNTS.** As collateral security for repayment of this Note and all renewals and extensions, as well as to secure any and all other loans, notes, indebtedness and obligations that Borrower may now and in the future owe to Lender or incur in Lender's favor, whether direct or indirect, absolute or contingent, due or to become due, of any nature and kind whatsoever (with the exception of any indebtedness under a consumer credit card account), and to the extent permitted by law, Borrower is granting Lender a continuing security interest in any and all

PROMISSORY NOTE
(Continued)

Loan No: 0001                                                                     Page 2

funds that Borrower may now and in the future have on deposit with Lender or in certificates of deposit or other deposit accounts as to which Borrower is an account holder (with the exception of IRA, pension, and other tax-deferred deposits). Borrower further agrees that, to the extent permitted by law, Lender may at any time apply any funds that Borrower may have on deposit with Lender or in certificates of deposit or other deposit accounts as to which Borrower is an account holder against the unpaid balance of this Note and any and all other present and future indebtedness and obligations that Borrower may then owe to Lender, in principal, interest, fees, costs, expenses, and reasonable attorneys' fees.

**COLLATERAL.** Borrower acknowledges this Note is secured by various collateral. Collateral securing other loans with Lender may also secure this Note as the result of cross-collateralization.

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**WAIVERS.** Borrower and each guarantor of this Note hereby waive demand, presentment for payment, protest, notice of protest and notice of nonpayment, and all pleas of division and discussion, and severally agree that their obligations and liabilities to Lender hereunder shall be on a "solidary" or "joint and several" basis. Borrower and each guarantor further severally agree that discharge or release of any party who is or may be liable to Lender for the indebtedness represented hereby, or the release of any collateral directly or indirectly securing repayment hereof, shall not have the effect of releasing any other party or parties, who shall remain liable to Lender, or of releasing any other collateral that is not expressly released by Lender. Borrower and each guarantor additionally agree that Lender's acceptance of payment other than in accordance with the terms of this Note, or Lender's subsequent agreement to extend or modify such repayment terms, or Lender's failure or delay in exercising any rights or remedies granted to Lender, shall likewise not have the effect of releasing Borrower or any other party or parties from their respective obligations to Lender, or of releasing any collateral that directly or indirectly secures repayment hereof. In addition, any failure or delay on the part of Lender to exercise any of the rights and remedies granted to Lender shall not have the effect of waiving any of Lender's rights and remedies. Any partial exercise of any rights and/or remedies granted to Lender shall furthermore not be construed as a waiver of any other rights and remedies; it being Borrower's intent and agreement that Lender's rights and remedies shall be cumulative in nature. Borrower and each guarantor further agree that, should any default event occur or exist under this Note, any waiver or forbearance on the part of Lender to pursue the rights and remedies available to Lender, shall be binding upon Lender only to the extent that Lender's specifically agrees to any such waiver or forbearance in writing. A waiver or forbearance on the part of Lender as to one default event shall not be construed as a waiver or forbearance as to any other default. Borrower and each guarantor of this Note further agree that any late charges provided for under this Note will not be charges for deferral of time for payment and will not and are not intended to compensate Lender's for a grace or cure period, and no such deferral, grace or cure period has or will be granted to Borrower in return for the imposition of any late charge. Borrower recognizes that Borrower's failure to make timely payment of amounts due under this Note will result in damages to Lender, including but not limited to Lender's loss of the use of amounts due, and Borrower agrees that any late charges imposed by Lender hereunder will represent reasonable compensation to Lender for such damages. Failure to pay in full any installment or payment timely when due under this Note, whether or not a late charge is assessed, will remain and shall constitute an Event of Default hereunder.

**SUCCESSORS AND ASSIGNS LIABLE.** Borrower's and each guarantor's obligations and agreements under this Note shall be binding upon Borrower's and each guarantor's respective successors, heirs, legatees, devisees, administrators, executors and assigns. The rights and remedies granted to Lender under this Note shall inure to the benefit of Lender's successors and assigns, as well as to any subsequent holder or holders of this Note.

**CAPTION HEADINGS.** Caption headings in this Note are for convenience purposes only and are not to be used to interpret or define the provisions of this Note.

**SEVERABILITY.** If any provision of this Note is held to be invalid, illegal or unenforceable by any court, that provision shall be deleted from this Note and the balance of this Note shall be interpreted as if the deleted provision never existed.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's successors, heirs, legatees, devisees, administrators, executors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**APPLICABLE LENDING LAW.** To the extent not preempted by federal law, this business or commercial loan is being made under the terms and provisions of La. R.S. 9:3509, et seq.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE.

BORROWER:

OFFSHORE MARINE CONTRACTORS, INC.

By: _____                                By: _____
RAIMY ODIARD-EYMARD , President/Treasurer of      LOUIS J. EYMARD, II, Executive Vice President of
OFFSHORE MARINE CONTRACTORS, INC.               OFFSHORE MARINE CONTRACTORS, INC.

By: _____
JORDAN R. ORGERON, Secretary of OFFSHORE
MARINE CONTRACTORS, INC.

## CHANGE IN TERMS AGREEMENT

| Principal $1,100,030.00 | Loan Date 05-30-2019 | Maturity 06-02-2020 | Loan No 0001 | Call / Coll 83 | Account 50507558 | Officer MOC | Initials |
|---|---|---|---|---|---|---|---|

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** OFFSHORE MARINE CONTRACTORS, INC. (TIN: 72-1446077)
133 W. 113TH STREET
CUT OFF, LA  70345

**Lender:** MISSISSIPPI RIVER BANK
MAIN OFFICE BRANCH-MOC
POST OFFICE BOX 607
BELLE CHASSE, LA  70037

---

**Principal Amount: $1,100,030.00**   **Date of Agreement:**  May 30, 2019

**DESCRIPTION OF EXISTING INDEBTEDNESS.** Original note dated 5-24-18 in the amount of $1,100,030.00.

**DESCRIPTION OF COLLATERAL.** Borrower acknowledges this Note is secured by various collateral. Collateral securing other loans with Lender may also secure this Note as the result of cross-collateralization.

**DESCRIPTION OF CHANGE IN TERMS.** Rate and payment amount change. New rate-3.75%.

**PAYMENT.** Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, Borrower will pay this loan in one principal payment of One Million One Hundred Thousand Thirty & 00/100 Dollars ($1,100,030.00) due on June 2, 2020. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning July 2, 2019, with all subsequent interest payments to be due on the same day of each month after that.

**INTEREST CALCULATION METHOD.** Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in the loan documents.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT.

BORROWER:

OFFSHORE MARINE CONTRACTORS, INC.

By:_____
RAIMY DUARD EYMARD , President/Treasurer of
OFFSHORE MARINE CONTRACTORS, INC.

By:_____
LOUIS J. EYMARD, II, Executive Vice President of
OFFSHORE MARINE CONTRACTORS, INC.

By:_____
JORDAN R. ORGERON, Secretary of OFFSHORE
MARINE CONTRACTORS, INC.

LaserPro, Ver. 19.1.10.018  Copr. Finastra USA Corporation 1997, 2019.  All Rights Reserved.  - LA  C:\APPS\CFI\LPL\D10C.FC  TR-13801

## PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $3,989,009.38 | 09-02-2015 | 10-02-2015 | 3098 | 88 | 50507558 | MOC | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "*****" has been omitted due to text length limitations.

**Borrower:** OFFSHORE MARINE CONTRACTORS, INC. (TIN:
72-1446077)
133 W. 113TH STREET
CUT OFF, LA 70345

**Lender:** MISSISSIPPI RIVER BANK
BELLE CHASSE-MAIN OFFICE
8435 HWY 23
BELLE CHASSE, LA 70037

**Principal Amount: $3,989,009.38**                           Date of Note: September 2, 2015

**PROMISE TO PAY.** OFFSHORE MARINE CONTRACTORS, INC. ("Borrower") promises to pay to the order of MISSISSIPPI RIVER BANK ("Lender"), in lawful money of the United States of America the sum of Three Million Nine Hundred Eighty-nine Thousand Nine & 38/100 Dollars (U.S. $3,989,009.38) or such other or lesser amounts as may be reflected from time to time on Lender's books and records as evidencing the aggregate unpaid principal balance of loan advances made to Borrower on a multiple advance basis as provided herein, together with simple interest assessed on a variable rate basis as provided in the "VARIABLE INTEREST RATE" paragraph, with interest being assessed on the unpaid principal balance of this Note as outstanding from time to time, commencing on September 2, 2015, and continuing until this Note is paid in full.

**MULTIPLE ADVANCE LOAN.** This Note contemplates multiple loan advances. Once the total amount of principal has been advanced under this Note, Borrower will not be entitled to further loan advances. Advances under this Note, as well as directions for payment from Borrower's accounts, may be requested orally or in writing by Borrower or by an authorized person. Lender may, but need not, require that all oral requests be confirmed in writing. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's deposit accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs. Lender will have no obligation to advance funds under this Note if: (A) Borrower or any guarantor is in default under the terms of this Note or any agreement that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Note; (B) Borrower or any guarantor ceases doing business or is insolvent; (C) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Note or any other loan with Lender; (D) Borrower has applied funds provided pursuant to this Note for purposes other than those acceptable to Lender; or (E) Lender in good faith believes itself insecure with regard to repayment of this Note or any other agreement between Lender and Borrower.

**PAYMENT.** Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on October 2, 2015. Unless otherwise agreed or required by applicable law, payments will be applied first to any unpaid collection costs; then to any late charges; then to any accrued unpaid interest; and then to principal. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the JP MORGAN CHASE (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each DAY. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 3.250% per annum. Interest on the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 4.750 percentage points over the Index, resulting in an initial rate of 8.000% per annum based on a year of 360 days. Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in this Note.

**PREPAYMENT PENALTY.** Upon prepayment of this Note, Lender is entitled to the following prepayment penalty: A PRE-PAYMENT FEE OF 4% WILL BE INCURRED IF THE LOAN IS "PAID IN FULL" EARLIER THAN THROUGH NORMAL AMORTIZATION. Other than Borrower's obligation to pay any prepayment penalty, Borrower may prepay this Note in full at any time by paying the then unpaid principal balance of this Note, plus accrued simple interest and any unpaid late charges through date of prepayment. If Borrower prepays this Note in full, or if Lender accelerates payment, Borrower understands that, unless otherwise required by law, any prepaid fees or charges will not be subject to rebate and will be earned by Lender at the time this Note is signed. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: MISSISSIPPI RIVER BANK, BELLE CHASSE-MAIN OFFICE, 8435 HWY 23, BELLE CHASSE, LA 70037.

**LATE CHARGE.** If Borrower fails to pay any payment under this Note in full within 10 days of when due, Borrower agrees to pay Lender a late payment fee in an amount equal to 5.000% of the unpaid portion of the regularly scheduled payment or $100.00, whichever is greater. Late charges will not be assessed following declaration of default and acceleration of the maturity of this Note.

**INTEREST AFTER DEFAULT.** If Lender declares this Note to be in default, Lender has the right prospectively to adjust and fix the simple interest rate under this Note until this Note is paid in full, as follows: (A) if the original principal amount of this Note is $250,000 or less, the fixed default interest rate shall be equal to eighteen (18%) percent per annum based on a year of 360 days, or three (3%) percent per annum in excess of the interest rate under this Note, whichever is greater. (B) If the original principal amount of this Note is more than $250,000, the fixed default interest rate shall be equal to twenty-one (21%) percent per annum based on a year of 360 days, or three (3%) percent per annum in excess of the interest rate under this Note at the time of default, whichever is greater.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

    **Payment Default.** Borrower fails to make any payment when due under this Note.

    **Default Under Security Agreements.** Should Borrower or any guarantor violate, or fail to comply fully with any of the terms and conditions of, or default under any security right, instrument, document, or agreement directly or indirectly securing repayment of this Note.

    **Other Defaults in Favor of Lender.** Should Borrower or any guarantor of this Note default under any other loan, extension of credit, security right, instrument, document, or agreement, or obligation in favor of Lender.

    **Default in Favor of Third Parties.** Should Borrower or any guarantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may affect any property or other collateral directly or indirectly securing repayment of this Note.

    **Insolvency.** Should the suspension, failure or insolvency, however evidenced, of Borrower or any Guarantor of this Note occur or exist.

    **Death or Interdiction.** Should any guarantor of this Note die or be interdicted.

    **Readjustment of Indebtedness.** Should proceedings for readjustment of indebtedness, reorganization, bankruptcy, composition or extension under any insolvency law be brought by or against Borrower or any guarantor.

    **Assignment for Benefit of Creditors.** Should Borrower or any guarantor file proceedings for a respite or make a general assignment for the benefit of creditors.

    **Receivership.** Should a receiver of all or any part of Borrower's property, or the property of any guarantor, be applied for or appointed.

    **Dissolution Proceedings.** Proceedings for the dissolution or appointment of a liquidator of Borrower or any guarantor are commenced.

    **False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

    **Material Adverse Change.** Should any material adverse change occur in the financial condition of Borrower or any guarantor of this Note or should any material discrepancy exist between the financial statements submitted by Borrower or any guarantor and the actual financial condition of Borrower or such guarantor.

    **Insecurity.** Lender in good faith believes itself insecure with regard to repayment of this Note.

## PROMISSORY NOTE
(Continued)

Loan No: 3098                                                                                                  Page 2

**LENDER'S RIGHTS UPON DEFAULT.** Should any one or more default events occur or exist under this Note as provided above, Lender shall have the right, at Lender's sole option, to declare formally this Note to be in default and to accelerate the maturity and insist upon immediate payment in full of the unpaid principal balance then outstanding under this Note, plus accrued interest, together with reasonable attorneys' fees, costs, expenses and other fees and charges as provided herein. Lender shall have the further right, again at Lender's sole option, to declare formal default and to accelerate the maturity and to insist upon immediate payment in full of each and every other loan, extension of credit, debt, liability and/or obligation of every nature and kind that Borrower may then owe to Lender, whether direct or indirect or by way of assignment, and whether absolute or contingent, liquidated or unliquidated, voluntary or involuntary, determined or undetermined, secured or unsecured, whether Borrower is obligated alone or with others on a "solidary" or "joint and several" basis, as a principal obligor or otherwise, all without further notice or demand, unless Lender shall otherwise elect.

**ATTORNEYS' FEES; EXPENSES.** If Lender refers this Note to an attorney for collection, or files suit against Borrower to collect this Note, or if Borrower files for bankruptcy or other relief from creditors, Borrower agrees to pay Lender's reasonable attorneys' fees.

**WAIVE JURY. BORROWER AND LENDER HEREBY WAIVE THE RIGHT TO ANY JURY TRIAL IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM BROUGHT BY EITHER BORROWER OR LENDER AGAINST THE OTHER.**

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Louisiana without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Louisiana.

**DEPOSIT ACCOUNTS.** As collateral security for repayment of this Note and all renewals and extensions, as well as to secure any and all other loans, notes, indebtedness and obligations that Borrower may now and in the future owe to Lender or incur in Lender's favor, whether direct or indirect, absolute or contingent, due or to become due, of any nature and kind whatsoever (with the exception of any indebtedness under a consumer credit card account), and to the extent permitted by law, Borrower is granting Lender a continuing security interest in any and all funds that Borrower may now and in the future have on deposit with Lender or in certificates of deposit or other deposit accounts as to which Borrower is an account holder (with the exception of IRA, pension, and other tax-deferred deposits). Borrower further agrees that, to the extent permitted by law, Lender may at any time apply any funds that Borrower may have on deposit with Lender or in certificates of deposit or other deposit accounts as to which Borrower is an account holder against the unpaid balance of this Note and any and all other present and future indebtedness and obligations that Borrower may then owe to Lender, in principal, interest, fees, costs, expenses, and reasonable attorneys' fees.

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**WAIVERS.** Borrower and each guarantor of this Note hereby waive demand, presentment for payment, protest, notice of protest and notice of nonpayment, and all pleas of division and discussion, and severally agree that their obligations and liabilities to Lender hereunder shall be on a "solidary" or "joint and several" basis. Borrower and each guarantor further severally agree that discharge or release of any party who is or may be liable to Lender for the indebtedness represented hereby, or the release of any collateral directly or indirectly securing repayment hereof, shall not have the effect of releasing any other party or parties, who shall remain liable to Lender, or of releasing any other collateral that is not expressly released by Lender. Borrower and each guarantor additionally agree that Lender's acceptance of payment other than in accordance with the terms of this Note, or Lender's subsequent agreement to extend or modify such repayment terms, or Lender's failure or delay in exercising any rights or remedies granted to Lender, shall likewise not have the effect of releasing Borrower or any other party or parties from their respective obligations to Lender, or of releasing any collateral that directly or indirectly secures repayment hereof. In addition, any failure or delay on the part of Lender to exercise any of the rights or remedies granted to Lender shall not have the effect of waiving any of Lender's rights and remedies. Any partial exercise of any rights and/or remedies granted to Lender shall furthermore not be construed as a waiver of any other rights and remedies; it being Borrower's intent and agreement that Lender's rights and remedies shall be cumulative in nature. Borrower and each guarantor further agree that, should any default event occur or exist under this Note, any waiver or forbearance on the part of Lender to pursue the rights and remedies available to Lender, shall be binding upon Lender only to the extent that Lender specifically agrees to any such waiver or forbearance in writing. A waiver or forbearance on the part of Lender as to one default event shall not be construed as a waiver or forbearance as to any other default. Borrower and each guarantor of this Note further agree that any late charges provided for under this Note will not be charges for deferral of time for payment and will not and are not intended to compensate Lender's for a grace or cure period, and no such deferral, grace or cure period has or will be granted to Borrower in return for the imposition of any late charge. Borrower recognizes that Borrower's failure to make timely payment of amounts due under this Note will result in damages to Lender, including but not limited to Lender's loss of the use of amounts due, and Borrower agrees that any late charges imposed by Lender hereunder will represent reasonable compensation to Lender for such damages. Failure to pay in full any installment or payment timely when due under this Note, whether or not a late charge is assessed, will remain and shall constitute an Event of Default hereunder.

**SUCCESSORS AND ASSIGNS LIABLE.** Borrower's and each guarantor's obligations and agreements under this Note shall be binding upon Borrower's and each guarantor's respective successors, heirs, legatees, devisees, administrators, executors and assigns. The rights and remedies granted to Lender under this Note shall inure to the benefit of Lender's successors and assigns, as well as to any subsequent holder or holders of this Note.

**CAPTION HEADINGS.** Caption headings in this Note are for convenience purposes only and are not to be used to interpret or define the provisions of this Note.

**SEVERABILITY.** If any provision of this Note is held to be invalid, illegal or unenforceable by any court, that provision shall be deleted from this Note and the balance of this Note shall be interpreted as if the deleted provision never existed.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's successors, heirs, legatees, devisees, administrators, executors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**APPLICABLE LENDING LAW.** To the extent not preempted by federal law, this business or commercial loan is being made under the terms and provisions of La. R.S. 9:3509, et seq.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS.**

BORROWER:

OFFSHORE MARINE CONTRACTORS, INC.

By: _____          By: _____
RAIMY EDUARD LEYMARD    , Executive  Vice                DAVID M. MAGGIO, President  of  OFFSHORE
President/Secretary   of   OFFSHORE   MARINE              MARINE CONTRACTORS, INC.
CONTRACTORS, INC.

## CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $3,989,009.38 | 10-01-2015 | 05-28-2016 | 3098 | 88 | 50507558 | MOC | [N] |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

Borrower:   OFFSHORE MARINE CONTRACTORS, INC. (TIN:          Lender:   MISSISSIPPI RIVER BANK
72-1446077)                                                         BELLE CHASSE-MAIN OFFICE
133 W. 113TH STREET                                                 8435 HWY 23
CUT OFF, LA  70345                                                  BELLE CHASSE, LA  70037

Principal Amount:  $3,989,009.38                                   Date of Agreement:  October 1, 2015

DESCRIPTION OF EXISTING INDEBTEDNESS.  Original note dated 9-2-15 in the amount of $3,989,009.38.

DESCRIPTION OF CHANGE IN TERMS.  Rate and payment amount change.

PAYMENT.  Borrower will pay this loan in full immediately upon Lender's demand.  If no demand is made, Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on May 28, 2016.  In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning October 28, 2015, with all subsequent interest payments to be due on the same day of each month after that until this Agreement is paid in full.

VARIABLE INTEREST RATE.  The interest rate on this loan is subject to change from time to time based on changes in an independent index which is the JP MORGAN CHASE  (the "Index").  The Index is not necessarily the lowest rate charged by Lender on its loans.  If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower.  Lender will tell Borrower the current index rate upon Borrower's request.  The interest rate change will not occur more often than each DAY.  Borrower understands that Lender may make loans based on other rates as well.  The index currently is 3.250% per annum.  Interest on the unpaid principal balance of this loan will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 4.750 percentage points over the Index, resulting in an initial rate of 8.000% per annum based on a year of 360 days.  Under no circumstances will the interest rate on this loan be more than the maximum rate allowed by applicable law.

INTEREST CALCULATION METHOD.  Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding.  All interest payable under this loan is computed using this method.  This calculation method results in a higher effective interest rate than the numeric interest rate stated in the loan documents.

CONTINUING VALIDITY.  Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect.  Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms.  Nothing in this Agreement will constitute a satisfaction of the obligation(s).  It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing.  Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement.  If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it.  This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS.

BORROWER:

OFFSHORE MARINE CONTRACTORS, INC.

By: _____          By: _____
RAIMY  GUARD  EYMARD  ,  Executive  Vice           DAVID  M. / MAGGIO,│  President  of  OFFSHORE
President/Secretary   of   OFFSHORE   MARINE        MARINE CONTRACTORS, INC.
CONTRACTORS, INC.

LaserPro, Ver. 15.4.0.179  Copr. D+H USA Corporation 1997, 2015.  All Rights Reserved.  - LA  P:\APPS\CFI\LPL\D20C.FC  TR-16070

## CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $3,901,912.46 | 05-23-2016 | 08-28-2016 | 3098 | 38 | 50507558 | MOC | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

Borrower:   OFFSHORE MARINE CONTRACTORS, INC. (TIN:
            72-1446077)
            133 W. 113TH STREET
            CUT OFF, LA 70345

Lender:   MISSISSIPPI RIVER BANK
          MAIN OFFICE BRANCH-MOC
          POST OFFICE BOX 607
          BELLE CHASSE, LA 70037

Principal Amount:  $3,901,912.46                                    Date of Agreement:  May 23, 2016

DESCRIPTION OF EXISTING INDEBTEDNESS.  Original note dated 9-2-15 in the amount of $3,989,009.38.

DESCRIPTION OF CHANGE IN TERMS.  Rate and payment amount change.

PAYMENT.  Borrower will pay this loan in full immediately upon Lender's demand.  If no demand is made, Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on August 28, 2016.  In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning June 28, 2016, with all subsequent interest payments to be due on the same day of each month after that until this Agreement is paid in full.

VARIABLE INTEREST RATE.  The interest rate on this loan is subject to change from time to time based on changes in an independent index which is the JP MORGAN CHASE (the "Index").  The Index is not necessarily the lowest rate charged by Lender on its loans.  If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower.  Lender will tell Borrower the current Index rate upon Borrower's request.  The interest rate change will not occur more often than each DAY.  Borrower understands that Lender may make loans based on other rates as well.  The Index currently is 3.500% per annum.  Interest on the unpaid principal balance of this loan will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 4.750 percentage points over the Index, resulting in an initial rate of 8.250% per annum based on a year of 360 days.  Under no circumstances will the interest rate on this loan be more than the maximum rate allowed by applicable law.

INTEREST CALCULATION METHOD.  Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding.  All interest payable under this loan is computed using this method.  This calculation method results in a higher effective interest rate than the numeric interest rate stated in the loan documents.

CONTINUING VALIDITY.  Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect.  Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms.  Nothing in this Agreement will constitute a satisfaction of the obligation(s).  It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing.  Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement.  If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it.  This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS.

BORROWER:

OFFSHORE MARINE CONTRACTORS, INC.

By: _____
RAIMY  BUARD  EYMARD , Executive Vice
President/Secretary   of   OFFSHORE   MARINE
CONTRACTORS, INC.

By: _____
DAVID  M.  MAGGIO, President  of  OFFSHORE
MARINE CONTRACTORS, INC.

LaserPro, Ver. 18.1.0.036  Copr. D a H USA Corporation 1997, 2016.  All Rights Reserved.  - LA  E:\APPS\CFI\LPL\PROFILE\PE  TR-30450

## CHANGE IN TERMS AGREEMENT

| Principal $3,886,874.52 | Loan Date 08-26-2016 | Maturity 05-28-2017 | Loan No 3098 | Call / Coll 88 | Account 50507558 | Officer MOC | Initials |
|---|---|---|---|---|---|---|---|

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** OFFSHORE MARINE CONTRACTORS, INC. (TIN: 72-1446077)
133 W. 113TH STREET
CUT OFF, LA  70345

**Lender:** MISSISSIPPI RIVER BANK
MAIN OFFICE BRANCH-MOC
POST OFFICE BOX 607
BELLE CHASSE , LA  70037

**Principal Amount: $3,886,874.52**                                    **Date of Agreement: August 26, 2016**

DESCRIPTION OF EXISTING INDEBTEDNESS.  Original note dated 9-2-15 in the amount of $3,969,009.38.

DESCRIPTION OF CHANGE IN TERMS.  Rate and payment amount change.

PAYMENT.  Borrower will pay this loan in full immediately upon Lender's demand.  If no demand is made, Borrower will pay this loan in one principal payment of Three Million Eight Hundred Eighty-six Thousand Eight Hundred Seventy-four & 52/100 Dollars ($3,886,874.52) due on May 28, 2017.  In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning September 28, 2016, with all subsequent interest payments to be due on the same day of each month after that.

VARIABLE INTEREST RATE.  The interest rate on this loan is subject to change from time to time based on changes in an independent index which is the JP MORGAN CHASE (the "Index").  The Index is not necessarily the lowest rate charged by Lender on its loans.  If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower.  Lender will tell Borrower the current Index rate upon Borrower's request.  The interest rate change will not occur more often than each DAY.  Borrower understands that Lender may make loans based on other rates as well.  The Index currently is 3.500% per annum.  Interest on the unpaid principal balance of this loan will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 4.750 percentage points over the Index, resulting in an initial rate of 8.250% per annum based on a year of 360 days.  Under no circumstances will the interest rate on this loan be more than the maximum rate allowed by applicable law.

INTEREST CALCULATION METHOD.  Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding.  All interest payable under this loan is computed using this method.  This calculation method results in a higher effective interest rate than the numeric interest rate stated in the loan documents.

CONTINUING VALIDITY.  Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect.  Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms.  Nothing in this Agreement will constitute a satisfaction of the obligation(s).  It is the intention of Lender to retain as liable parties all makers- and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing.  Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement.  If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it.  This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS.

BORROWER:

OFFSHORE MARINE CONTRACTORS, INC.

By: _____
RAIMY DUARD. EYMARD , Executive Vice
President/Secretary of OFFSHORE MARINE
CONTRACTORS, INC.

By: _____
DAVID M. MAGGIO, President of OFFSHORE
MARINE CONTRACTORS, INC.

LaserPro, Ver. 16.2.10.010  Copr. D & H USA Corporation 1997, 2016.  All Rights Reserved.  - LA  ASAPPS\CFI\LPL\D20C.FC  TR-51405

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $3,758,124.62 | 05-26-2017 | 08-28-2017 | 3098 | 82 | 50507558 | MOC | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** OFFSHORE MARINE CONTRACTORS, INC. (TIN: 72-1446077)
133 W. 113TH STREET
CUT OFF, LA 70345

**Lender:** MISSISSIPPI RIVER BANK
MAIN OFFICE BRANCH-MOC
POST OFFICE BOX 607
BELLE CHASSE, LA 70037

**Principal Amount:** $3,758,124.62 **Date of Agreement:** May 26, 2017

DESCRIPTION OF EXISTING INDEBTEDNESS. Original note dated 9-2-15 in the amount of $3,989,009.38.

DESCRIPTION OF CHANGE IN TERMS. Rate and payment amount change.

PAYMENT. Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, Borrower will pay this loan in one principal payment of Three Million Seven Hundred Fifty-eight Thousand One Hundred Twenty-four & 62/100 Dollars ($3,758,124.62) due on August 28, 2017. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning June 28, 2017, with all subsequent interest payments to be due on the same day of each month after that.

VARIABLE INTEREST RATE. The interest rate on this loan is subject to change from time to time based on changes in an independent index which is the JP MORGAN CHASE (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each DAY. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 4.000% per annum. Interest on the unpaid principal balance of this loan will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 4.750 percentage points over the Index, resulting in an initial rate of 8.750% per annum based on a year of 360 days. Under no circumstances will the interest rate on this loan be more than the maximum rate allowed by applicable law.

INTEREST CALCULATION METHOD. Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in the loan documents.

CONTINUING VALIDITY. Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS.

BORROWER:

OFFSHORE MARINE CONTRACTORS, INC.

By: ______________________
RAIMY DUARD EYMARD, Executive Vice President/Secretary of OFFSHORE MARINE CONTRACTORS, INC.

By: ______________________
DAVID M. MAGGIO, President of OFFSHORE MARINE CONTRACTORS, INC.

LaserPro, Ver. 17.1.10.015 Copr. D+H USA Corporation 1997, 2017. All Rights Reserved. - LA P:\APPS\CFI\LPL\D20C.FC TR-16872

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $3,758,124.62 | 07-17-2017 | 05-28-2018 | 3098 | 88 | 50507558 | MOC | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** OFFSHORE MARINE CONTRACTORS, INC. (TIN: 72-1446077)
133 W. 113TH STREET
CUT OFF, LA 70345

**Lender:** MISSISSIPPI RIVER BANK
MAIN OFFICE BRANCH-MOC
POST OFFICE BOX 607
BELLE CHASSE, LA 70037

**Principal Amount:** $3,758,124.62 **Date of Agreement:** July 17, 2017

DESCRIPTION OF EXISTING INDEBTEDNESS. Original note dated 9-2-15 in the amount of $3,989,009.38.

DESCRIPTION OF CHANGE IN TERMS. Rate and payment amount change.

PAYMENT. Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, Borrower will pay this loan in one principal payment of Three Million Seven Hundred Fifty-eight Thousand One Hundred Twenty-four & 62/100 Dollars ($3,758,124.62) due on May 28, 2018. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning July 28, 2017, with all subsequent interest payments to be due on the same day of each month after that.

VARIABLE INTEREST RATE. The interest rate on this loan is subject to change from time to time based on changes in an independent index which is the JP MORGAN CHASE (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each DAY. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 4.250% per annum. Interest on the unpaid principal balance of this loan will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 4.750 percentage points over the Index, resulting in an initial rate of 9.000% per annum based on a year of 360 days. Under no circumstances will the interest rate on this loan be more than the maximum rate allowed by applicable law.

INTEREST CALCULATION METHOD. Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in the loan documents.

CONTINUING VALIDITY. Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS.

BORROWER:

OFFSHORE MARINE CONTRACTORS, INC.

By: ______________________
RAIMY DUARD EYMARD, Executive Vice President/Secretary of OFFSHORE MARINE CONTRACTORS, INC.

By: ______________________
DAVID M. MAGGIO, President of OFFSHORE MARINE CONTRACTORS, INC.

LaserPro, Ver. 17.2.0.010 Copr. D+H USA Corporation 1997, 2017. All Rights Reserved. - LA C:\APPS\CFI\LPL\D20C.FC TR-16872

## CHANGE IN TERMS AGREEMENT

| Principal $2,474,176.28 | Loan Date 05-24-2018 | Maturity 06-02-2019 | Loan No 3098 | Call / Coll 82 | Account 50507558 | Officer MOC | Initials |
|---|---|---|---|---|---|---|---|

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

Borrower:   OFFSHORE MARINE CONTRACTORS, INC. (TIN:
72-1446077)
133 W. 113TH STREET
CUT OFF, LA 70345

Lender:   MISSISSIPPI RIVER BANK
MAIN OFFICE BRANCH-MOC
POST OFFICE BOX 607
BELLE CHASSE, LA 70037

Principal Amount: $2,474,176.28                                          Date of Agreement: May 24, 2018

**DESCRIPTION OF EXISTING INDEBTEDNESS.** Original note dated 9-2-15 in the amount of $3,989,009.38.

**DESCRIPTION OF COLLATERAL.** Borrower acknowledges this Note is secured by various collateral. Collateral securing other loans with Lender may also secure this Note as the result of cross-collateralization.

**DESCRIPTION OF CHANGE IN TERMS.** Rate and payment amount change.

**PAYMENT.** Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, Borrower will pay this loan in 11 regular payments of $34,434.68 each and one irregular last payment estimated at $2,332,223.96. Borrower's first payment is due July 2, 2018, and all subsequent payments are due on the same day of each month after that. Borrower's final payment due on June 2, 2019, may be greater if Borrower does not make payments as scheduled.

**VARIABLE INTEREST RATE.** The interest rate on this loan is subject to change from time to time based on changes in an independent index which is the JP MORGAN CHASE (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each DAY. Borrower understands that Lender may make loans based on other rates as well. The Index is currently is 4.750% per annum. Interest on the unpaid principal balance of this loan will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 4.750 percentage points over the Index, resulting in an initial rate of 9.500% per annum based on a year of 360 days. Under no circumstances will the interest rate on this loan be more than the maximum rate allowed by applicable law. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

**INTEREST CALCULATION METHOD.** Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in the loan documents.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS.

BORROWER:

OFFSHORE MARINE CONTRACTORS, INC.

By:
RAINY GUARD EYMARD , President/Treasurer of
OFFSHORE MARINE CONTRACTORS, INC.

By:
LOUIS J. EYMARD, II, Executive Vice President of
OFFSHORE MARINE CONTRACTORS, INC.

By:
JORDAN R. ORGERON, Secretary of OFFSHORE
MARINE CONTRACTORS, INC.

LaserPro, Ver. 18.1.10.007 Copr. Finastra USA Corporation 1997, 2018. All Rights Reserved. - LA C:\APPS\CFI\LPL\D20E.FC TR-17203

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,324,851.01 | 05-30-2019 | 06-02-2020 | 3098 | 82 | 50507558 | MOC | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** OFFSHORE MARINE CONTRACTORS, INC. (TIN: 72-1446077)
133 W. 113TH STREET
CUT OFF, LA 70345

**Lender:** MISSISSIPPI RIVER BANK
MAIN OFFICE BRANCH-MOC
POST OFFICE BOX 607
BELLE CHASSE, LA 70037

**Principal Amount: $2,324,851.01** **Date of Agreement: May 30, 2019**

DESCRIPTION OF EXISTING INDEBTEDNESS. Original note dated 9-2-15 in the amount of $3,989,009.38.

DESCRIPTION OF COLLATERAL. Borrower acknowledges this Note is secured by various collateral. Collateral securing other loans with Lender may also secure this Note as the result of cross-collateralization.

DESCRIPTION OF CHANGE IN TERMS. Rate and payment amount change.

PAYMENT. **Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, Borrower will pay this loan in 11 regular payments of $35,562.65 each and one irregular last payment estimated at $2,169,053.74. Borrower's first payment is due July 2, 2019, and all subsequent payments are due on the same day of each month after that. Borrower's final payment due on June 2, 2020, may be greater if Borrower does not make payments as scheduled.**

VARIABLE INTEREST RATE. The interest rate on this loan is subject to change from time to time based on changes in an independent index which is the JP MORGAN CHASE (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each DAY. Borrower understands that Lender may make loans based on other rates as well. **The Index currently is 5.500% per annum.** Interest on the unpaid principal balance of this loan will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 4.750 percentage points over the Index, resulting in an initial rate of 10.250% per annum based on a year of 360 days. Under no circumstances will the interest rate on this loan be more than the maximum rate allowed by applicable law. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

INTEREST CALCULATION METHOD. **Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in the loan documents.**

CONTINUING VALIDITY. Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS.**

BORROWER:

OFFSHORE MARINE CONTRACTORS, INC.

By: ______________________________
RAIMY DUARD EYMARD, President/Treasurer of OFFSHORE MARINE CONTRACTORS, INC.

By: ______________________________
LOUIS J. EYMARD, II, Executive Vice President of OFFSHORE MARINE CONTRACTORS, INC.

By: ______________________________
JORDAN R. ORGERON, Secretary of OFFSHORE MARINE CONTRACTORS, INC.

LaserPro, Ver. 19.1.10.010 Copr. Finastra USA Corporation 1997, 2019. All Rights Reserved. - LA C:\APPS\CFI\LPL\D20C.FC TR-17737

# EXHIBIT 3

# MRB Revolving Loan Agreement

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $3,000,000.00 | 05-28-2015 | 05-28-2016 | 2098 | 88 | 50507558 | MOC | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** OFFSHORE MARINE CONTRACTORS, INC. (TIN: 72-1446077)
133 W. 113TH STREET
CUT OFF, LA 70345

**Lender:** MISSISSIPPI RIVER BANK
BELLE CHASSE-MAIN OFFICE
8435 HWY 23
BELLE CHASSE, LA 70037

**Principal Amount: $3,000,000.00** **Date of Note: May 28, 2015**

**PROMISE TO PAY.** OFFSHORE MARINE CONTRACTORS, INC. ("Borrower") promises to pay to the order of MISSISSIPPI RIVER BANK ("Lender"), in lawful money of the United States of America the sum of Three Million & 00/100 Dollars (U.S. $3,000,000.00) or such other or lesser amounts as may be reflected from time to time on Lender's books and records as evidencing the aggregate unpaid principal balance of loan advances made to Borrower on a revolving line of credit basis as provided herein, together with simple interest assessed on a variable rate basis as provided in the "VARIABLE INTEREST RATE" paragraph, with interest being assessed on the unpaid principal balance of this Note as outstanding from time to time, commencing on May 28, 2015, and continuing until this Note is paid in full.

**LINE OF CREDIT.** This Note evidences a revolving line of credit "master note". Advances under this Note, as well as directions for payment from Borrower's accounts, may be requested orally or in writing by Borrower or by an authorized person. Lender may, but need not, require that all oral requests be confirmed in writing. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's deposit accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs. Lender will have no obligation to advance funds under this Note if: (A) Borrower or any guarantor is in default under the terms of this Note or any agreement that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Note; (B) Borrower or any guarantor ceases doing business or is insolvent; (C) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Note or any other loan with Lender; (D) Borrower has applied funds provided pursuant to this Note for purposes other than those acceptable to Lender; or (E) Lender in good faith believes itself insecure with regard to repayment of this Note or any other agreement between Lender and Borrower.

**PAYMENT.** Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on May 28, 2016. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning June 28, 2015, with all subsequent interest payments to be due on the same day of each month after that until this Note is paid in full. Unless otherwise agreed or required by applicable law, payments will be applied first to any unpaid collection costs; then to any late charges; then to any accrued unpaid interest; and then to principal. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the JP MORGAN CHASE (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each DAY. Borrower understands that Lender may make loans based on other rates as well. **The Index currently is 3.250% per annum.** Interest on the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 4.750 percentage points over the Index, resulting in an initial rate of 8.000% per annum based on a year of 360 days. Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in this Note.

**PREPAYMENT.** Other than Borrower's obligation to pay any prepayment penalty, Borrower may prepay this Note in full at any time by paying the then unpaid principal balance of this Note, plus accrued simple interest and any unpaid late charges through date of prepayment. If Borrower prepays this Note in full, or if Lender accelerates payment, Borrower understands that, unless otherwise required by law, any prepaid fees or charges will not be subject to rebate and will be earned by Lender at the time this Note is signed. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. **All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to:** MISSISSIPPI RIVER BANK, BELLE CHASSE-MAIN OFFICE, 8435 HWY 23, BELLE CHASSE, LA 70037.

**LATE CHARGE.** If Borrower fails to pay any payment under this Note in full within 10 days of when due, Borrower agrees to pay Lender a late payment fee in an amount equal to 5.000% of the unpaid portion of the regularly scheduled payment or $100.00, whichever is greater. Late charges will not be assessed following declaration of default and acceleration of the maturity of this Note.

**INTEREST AFTER DEFAULT.** If Lender declares this Note to be in default, Lender has the right prospectively to adjust and fix the simple interest rate under this Note until this Note is paid in full, as follows: (A) If the original principal amount of this Note is $250,000 or less, the fixed default interest rate shall be equal to eighteen (18%) percent per annum based on a year of 360 days, or three (3%) percent per annum in excess of the interest rate under this Note, whichever is greater. (B) If the original principal amount of this Note is more than $250,000, the fixed default interest rate shall be equal to twenty-one (21%) percent per annum based on a year of 360 days, or three (3%) percent per annum in excess of the interest rate under this Note at the time of default, whichever is greater.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Default Under Security Agreements.** Should Borrower or any guarantor violate, or fail to comply fully with any of the terms and conditions of, or default under any security right, instrument, document, or agreement directly or indirectly securing repayment of this Note.

**Other Defaults in Favor of Lender.** Should Borrower or any guarantor of this Note default under any other loan, extension of credit, security right, instrument, document, or agreement, or obligation in favor of Lender.

**Default in Favor of Third Parties.** Should Borrower or any guarantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may affect any property or other collateral directly or indirectly securing repayment of this Note.

**Insolvency.** Should the suspension, failure or insolvency, however evidenced, of Borrower or any Guarantor of this Note occur or exist.

**Death or Interdiction.** Should any guarantor of this Note die or be interdicted.

**Readjustment of Indebtedness.** Should proceedings for readjustment of indebtedness, reorganization, bankruptcy, composition or extension under any insolvency law be brought by or against Borrower or any guarantor.

**Assignment for Benefit of Creditors.** Should Borrower or any guarantor file proceedings for a respite or make a general assignment for the benefit of creditors.

**Receivership.** Should a receiver of all or any part of Borrower's property, or the property of any guarantor, be applied for or appointed.

**Dissolution Proceedings.** Proceedings for the dissolution or appointment of a liquidator of Borrower or any guarantor are commenced.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Material Adverse Change.** Should any material adverse change occur in the financial condition of Borrower or any guarantor of this Note or should any material discrepancy exist between the financial statements submitted by Borrower or any guarantor and the actual financial condition of Borrower or such guarantor.

**Insecurity.** Lender in good faith believes itself insecure with regard to repayment of this Note.

## PROMISSORY NOTE
### (Continued)

Loan No: 2098                                                                      Page 2

**LENDER'S RIGHTS UPON DEFAULT.** Should any one or more default events occur or exist under this Note as provided above, Lender shall have the right, at Lender's sole option, to declare formally this Note to be in default and to accelerate the maturity and insist upon immediate payment in full of the unpaid principal balance then outstanding under this Note, plus accrued interest, together with reasonable attorneys' fees, costs, expenses and other fees and charges as provided herein. Lender shall have the further right, again at Lender's sole option, to declare formal default and to accelerate the maturity and to insist upon immediate payment in full of each and every other loan, extension of credit, debt, liability and/or obligation of every nature and kind that Borrower may then owe to Lender, whether direct or indirect or by way of assignment, and whether absolute or contingent, liquidated or unliquidated, voluntary or involuntary, determined or undetermined, secured or unsecured, whether Borrower is obligated alone or with others on a "solidary" or "joint and several" basis, as a principal obligor or otherwise, all without further notice or demand, unless Lender shall otherwise elect.

**ATTORNEYS' FEES; EXPENSES.** If Lender refers this Note to an attorney for collection, or files suit against Borrower to collect this Note, or if Borrower files for bankruptcy or other relief from creditors, Borrower agrees to pay Lender's reasonable attorneys' fees.

**WAIVE JURY.** BORROWER AND LENDER HEREBY WAIVE THE RIGHT TO ANY JURY TRIAL IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM BROUGHT BY EITHER BORROWER OR LENDER AGAINST THE OTHER.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Louisiana without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Louisiana.

**DEPOSIT ACCOUNTS.** As collateral security for repayment of this Note and all renewals and extensions, as well as to secure any and all other loans, notes, indebtedness and obligations that Borrower may now and in the future owe to Lender or incur in Lender's favor, whether direct or indirect, absolute or contingent, due or to become due, of any nature and kind whatsoever (with the exception of any indebtedness under a consumer credit card account), and to the extent permitted by law, Borrower is granting Lender a continuing security interest in any and all funds that Borrower may now and in the future have on deposit with Lender or in certificates of deposit or other deposit accounts as to which Borrower is an account holder (with the exception of IRA, pension, and other tax-deferred deposits). Borrower further agrees that, to the extent permitted by law, Lender may at any time apply any funds that Borrower may have on deposit with Lender or in certificates of deposit or other deposit accounts as to which Borrower is an account holder against the unpaid balance of this Note and any and all other present and future indebtedness and obligations that Borrower may then owe to Lender, in principal, interest, fees, costs, expenses, and reasonable attorneys' fees.

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**WAIVERS.** Borrower and each guarantor of this Note hereby waive demand, presentment for payment, protest, notice of protest and notice of nonpayment, and all pleas of division and discussion, and severally agree that their obligations and liabilities to Lender hereunder shall be on a "solidary" or "joint and several" basis. Borrower and each guarantor further severally agree that discharge or release of any party who is or may be liable to Lender for the indebtedness represented hereby, or the release of any collateral directly or indirectly securing repayment hereof, shall not have the effect of releasing any other party or parties, who shall remain liable to Lender, or of releasing any other collateral that is not expressly released by Lender. Borrower and each guarantor additionally agree that Lender's acceptance of payment other than in accordance with the terms of this Note, or Lender's subsequent agreement to extend or modify such repayment terms, or Lender's failure or delay in exercising any rights or remedies granted to Lender, shall likewise not have the effect of releasing Borrower or any other party or parties from their respective obligations to Lender, or of releasing any collateral that directly or indirectly secures repayment hereof. In addition, any failure or delay on the part of Lender to exercise any of the rights and remedies granted to Lender shall not have the effect of waiving any of Lender's rights and remedies. Any partial exercise of any rights and/or remedies granted to Lender shall furthermore not be construed as a waiver of any other rights and remedies; it being Borrower's intent and agreement that Lender's rights and remedies shall be cumulative in nature. Borrower and each guarantor further agree that, should any default event occur or exist under this Note, any waiver or forbearance on the part of Lender to pursue the rights and remedies available to Lender, shall be binding upon Lender only to the extent that Lender's specifically agrees to any such waiver or forbearance in writing. A waiver or forbearance on the part of Lender as to one default event shall not be construed as a waiver or forbearance as to any other default. Borrower and each guarantor of this Note further agree that any late charges provided for under this Note will not be charges for deferral of time for payment and will not and are not intended to compensate Lender's for a grace or cure period, and no such deferral, grace or cure period has or will be granted to Borrower in return for the imposition of any late charge. Borrower recognizes that Borrower's failure to make timely payment of amounts due under this Note will result in damages to Lender, including but not limited to Lender's loss of the use of amounts due, and Borrower agrees that any late charges imposed by Lender hereunder will represent reasonable compensation to Lender for such damages. Failure to pay in full any installment or payment timely when due under this Note, whether or not a late charge is assessed, will remain and shall constitute an Event of Default hereunder.

**SUCCESSORS AND ASSIGNS LIABLE.** Borrower's and each guarantor's obligations and agreements under this Note shall be binding upon Borrower's and each guarantor's respective successors, heirs, legatees, devisees, administrators, executors and assigns. The rights and remedies granted to Lender under this Note shall inure to the benefit of Lender's successors and assigns, as well as to any subsequent holder or holders of this Note.

**CAPTION HEADINGS.** Caption headings in this Note are for convenience purposes only and are not to be used to interpret or define the provisions of this Note.

**SEVERABILITY.** If any provision of this Note is held to be invalid, illegal or unenforceable by any court, that provision shall be deleted from this Note and the balance of this Note shall be interpreted as if the deleted provision never existed.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's successors, heirs, legatees, devisees, administrators, executors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**APPLICABLE LENDING LAW.** To the extent not preempted by federal law, this business or commercial loan is being made under the terms and provisions of La. R.S. 9:3509, et seq.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS.

BORROWER:

OFFSHORE MARINE CONTRACTORS, INC.

By: _____          By: _____
RAIMY C. D. LEYMARD , Executive Vice          DAVID M. MAGGIO, President of OFFSHORE
President/Secretary of OFFSHORE MARINE          MARINE CONTRACTORS, INC.
CONTRACTORS, INC.

LaserPro, Ver. 19.1.10.002 Copr. D+H USA Corporation 1997, 2015.  All Rights Reserved.  - LA  F:\APPS\CFI\LPL\D20.FC  TR-15002

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,000,000.00 | 09-02-2015 | 10-02-2015 | 2098 | 88 | 50507558 | MOC | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing ***** has been omitted due to text length limitations.

**Borrower:** OFFSHORE MARINE CONTRACTORS, INC. (TIN: 72-1446077)
133 W. 113TH STREET
CUT OFF, LA 70345

**Lender:** MISSISSIPPI RIVER BANK
BELLE CHASSE-MAIN OFFICE
8435 HWY 23
BELLE CHASSE, LA 70037

---

**Principal Amount:** $2,000,000.00                    **Date of Agreement:** September 2, 2015

**DESCRIPTION OF EXISTING INDEBTEDNESS.** Original note dated 5-28-15 in the amount of $3,000,000.00.

**DESCRIPTION OF CHANGE IN TERMS.** Rate and payment amount change.

**PAYMENT.** Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on October 2, 2015.

**VARIABLE INTEREST RATE.** The interest rate on this loan is subject to change from time to time based on changes in an independent index which is the JP MORGAN CHASE (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each DAY. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 3.250% per annum. Interest on the unpaid principal balance of this loan will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 4.750 percentage points over the Index, resulting in an initial rate of 8.000% per annum based on a year of 360 days. Under no circumstances will the interest rate on this loan be more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD.** Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in this loan documents.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS.

BORROWER:

OFFSHORE MARINE CONTRACTORS, INC.

By: _____
RAINY DHARD EYMARD

By: _____
DAVID M. MAGGIO, President of OFFSHORE
MARINE CONTRACTORS, INC.

LaserPro, Ver. 15.4.0.173  Copr. © ih USA Corporation 1997, 2015.  All Rights Reserved.  - LA  F:\APPS\CFI\LPL\D20C.FC  TR-15012

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $2,000,000.00 | 10-01-2015 | 05-28-2016 | 2098 | 88 | 50507558 | MOC | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

| Borrower: | OFFSHORE MARINE CONTRACTORS, INC. (TIN: 72-1446077)<br>133 W. 113TH STREET<br>CUT OFF, LA 70345 | Lender: | MISSISSIPPI RIVER BANK<br>BELLE CHASSE-MAIN OFFICE<br>8435 HWY 23<br>BELLE CHASSE, LA 70037 |
|---|---|---|---|

**Principal Amount: $2,000,000.00**          **Date of Agreement: October 1, 2015**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** Original note dated 5-28-15 in the amount of $3,000,000.00.

**DESCRIPTION OF CHANGE IN TERMS.** Rate and payment amount change.

**PAYMENT.** Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on May 28, 2016. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning October 28, 2015, with all subsequent interest payments to be due on the same day of each month after that until this Agreement is paid in full.

**VARIABLE INTEREST RATE.** The interest rate on this loan is subject to change from time to time based on changes in an independent index which is the JP MORGAN CHASE (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each DAY. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 3.250% per annum. Interest on the unpaid principal balance of this loan will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 4.750 percentage points over the Index, resulting in an initial rate of 8.000% per annum based on a year of 360 days. Under no circumstances will the interest rate on this loan be more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD.** Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in the loan documents.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS.

BORROWER:

OFFSHORE MARINE CONTRACTORS, INC.

By: _____
RAIMY DUARD BYMARD , Executive Vice
President/Secretary of OFFSHORE MARINE
CONTRACTORS, INC.

By: _____
DAVID M. MAGGIO, President of OFFSHORE
MARINE CONTRACTORS, INC.

LaserPro, Ver. 15.4.0.179  Copr. D+H USA Corporation 1997, 2015.  All Rights Reserved.  - LA  F:\APPS\CFI\LPL\D20C.FC  TR-16071

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,000,000.00 | 05-23-2016 | 08-28-2016 | 2098 | 80 | 50507558 | MOC | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

Borrower: OFFSHORE MARINE CONTRACTORS, INC. (TIN:
72-1446077)
133 W. 113TH STREET
CUT OFF, LA 70345

Lender: MISSISSIPPI RIVER BANK
MAIN OFFICE BRANCH-MOC
POST OFFICE BOX 607
BELLE CHASSE , LA 70037

Principal Amount: $2,000,000.00                Date of Agreement: May 23, 2016

DESCRIPTION OF EXISTING INDEBTEDNESS. Original note dated 5-28-15 in the amount of $3,000,000.00.

DESCRIPTION OF CHANGE IN TERMS. Rate and payment amount change.

PAYMENT. Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on August 28, 2016. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning June 28, 2016, with all subsequent interest payments to be due on the same day of each month after that until this Agreement is paid in full.

VARIABLE INTEREST RATE. The interest rate on this loan is subject to change from time to time based on changes in an independent index which is the JP MORGAN CHASE (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each DAY. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 3.500% per annum. Interest on the unpaid principal balance of this loan will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 4.750 percentage points over the Index, resulting in an initial rate of 8.250% per annum based on a year of 360 days. Under no circumstances will the interest rate on this loan be more than the maximum rate allowed by applicable law.

INTEREST CALCULATION METHOD. Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in the loan documents.

CONTINUING VALIDITY. Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS.

BORROWER:

OFFSHORE MARINE CONTRACTORS, INC.

By: _____
RAIMY DUARD LEYMARD , Executive Vice
President/Secretary of OFFSHORE MARINE
CONTRACTORS, INC.

By: _____
DAVID M. MAGGIO, President of OFFSHORE
MARINE CONTRACTORS, INC.

LaserPro, Ver. 16.1.5.034  Copr. D+H USA Corporation 1997, 2016.  All Rights Reserved.  - LA  PAAPPE\CFI\LPL\D20C.FC  TR-10204

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,000,000.00 | 07-18-2016 | 05-28-2017 | 2098 | 80 | 50507558 | MOC | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**  OFFSHORE MARINE CONTRACTORS, INC. (TIN:
72-1446077)
133 W. 113TH STREET
CUT OFF, LA  70345

**Lender:**  MISSISSIPPI RIVER BANK
MAIN OFFICE BRANCH-MOC
POST OFFICE BOX 607
BELLE CHASSE , LA  70037

**Principal Amount: $2,000,000.00**                          **Date of Agreement:  July 18, 2016**

DESCRIPTION OF EXISTING INDEBTEDNESS.  Original note dated 5-28-15 in the amount of $3,000,000.00.

DESCRIPTION OF CHANGE IN TERMS.  Rate and payment amount change.

PAYMENT.  Borrower will pay this loan in full immediately upon Lender's demand.  If no demand is made, Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on May 28, 2017.  In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning July 28, 2016, with all subsequent interest payments to be due on the same day of each month after that until this Agreement is paid in full.

VARIABLE INTEREST RATE.  The interest rate on this loan is subject to change from time to time based on changes in an index which is the J P MORGAN CHASE  (the "Index").  Lender will tell Borrower the current Index rate upon Borrower's request.  The interest rate change will not occur more often than each ANNUALLY.  Borrower understands that Lender may make loans based on other rates as well.  The Index currently is 3.500% per annum.  Interest on the unpaid principal balance of this loan will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 4.750 percentage points over the Index, resulting in an initial rate of 8.250% per annum based on a year of 360 days.  Under no circumstances will the interest rate on this loan be more than the maximum rate allowed by applicable law.

INTEREST CALCULATION METHOD.  Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding.  All interest payable under this loan is computed using this method.  This calculation method results in a higher effective interest rate than the numeric interest rate stated in the loan documents.

CONTINUING VALIDITY.  Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect.  Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms.  Nothing in this Agreement will constitute a satisfaction of the obligation(s).  It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing.  Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement.  If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it.  This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS.

BORROWER:

OFFSHORE MARINE CONTRACTORS, INC.

By: _____
RAIMY  DUARD  EYMARD  ,  Executive  Vice
President/Secretary  of  OFFSHORE  MARINE
CONTRACTORS, INC.

By: _____
DAVID  M.  MAGGIO,  President  of  OFFSHORE
MARINE CONTRACTORS, INC.

LaserPro, Ver. 16.3.10.015  Copr. D+H USA Corporation 1997, 2016.  All Rights Reserved.  - LA  F:\APP\LPL\CFI\LPL\D20C.FC  TR-15257

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,000,000.00 | 05-26-2017 | 08-28-2017 | 2098 | 80 | 50507558 | MOC | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

Borrower:   OFFSHORE MARINE CONTRACTORS, INC. (TIN: 72-1446077)
133 W. 113TH STREET
CUT OFF, LA  70345

Lender:   MISSISSIPPI RIVER BANK
MAIN OFFICE BRANCH-MOC
POST OFFICE BOX 607
BELLE CHASSE, LA  70037

Principal Amount:  $2,000,000.00                                      Date of Agreement:  May 26, 2017

DESCRIPTION OF EXISTING INDEBTEDNESS.  Original note dated 5-26-15 in the amount of $3,000,000.00.

DESCRIPTION OF CHANGE IN TERMS.  Rate and payment amount change.

PAYMENT.  Borrower will pay this loan in full immediately upon Lender's demand.  If no demand is made, Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on August 28, 2017.  In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning June 28, 2017, with all subsequent interest payments to be due on the same day of each month after that until this Agreement is paid in full.

VARIABLE INTEREST RATE.  The interest rate on this loan is subject to change from time to time based on changes in an independent index which is the JP MORGAN CHASE  (the "Index").  The Index is not necessarily the lowest rate charged by Lender on its loans.  If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower.  Lender will tell Borrower the current Index rate upon Borrower's request.  The interest rate change will not occur more often than each DAY.  Borrower understands that Lender may make loans based on other rates as well.  The Index currently is 4.000% per annum.  Interest on the unpaid principal balance of this loan will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 4.750 percentage points over the Index, resulting in an initial rate of 8.750% per annum based on a year of 360 days.  Under no circumstances will the interest rate on this loan be more than the maximum rate allowed by applicable law.

INTEREST CALCULATION METHOD.  Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding.  All interest payable under this loan is computed using this method.  This calculation method results in a higher effective interest rate than the numeric interest rate stated in the loan documents.

CONTINUING VALIDITY.  Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect.  Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms.  Nothing in this Agreement will constitute a satisfaction of the obligation(s).  It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing.  Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement.  If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it.  This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS.

BORROWER:

OFFSHORE MARINE CONTRACTORS, INC.

By: _____
RAIMY   DUARD   EYMARD  ,  Executive   Vice
President/Secretary   of   OFFSHORE   MARINE
CONTRACTORS, INC.

By: _____
DAVID   B.   MAGGIO,   President   of   OFFSHORE
MARINE CONTRACTORS, INC.

LaserPro, Ver. 17.1.10.015  Copr. D+H USA Corporation 1997, 2017.  All Rights Reserved.  - LA  P:\APPS\CFI\LPL\G20C.FC  TR-10071

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,000,000.00 | 07-17-2017 | 05-28-2018 | 2098 | 80 | 50507558 | MOC | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** OFFSHORE MARINE CONTRACTORS, INC. (TIN: 72-1446077)
133 W. 113TH STREET
CUT OFF, LA 70345

**Lender:** MISSISSIPPI RIVER BANK
MAIN OFFICE BRANCH-MOC
POST OFFICE BOX 607
BELLE CHASSE, LA 70037

**Principal Amount:** $2,000,000.00

**Date of Agreement:** July 17, 2017

**DESCRIPTION OF EXISTING INDEBTEDNESS.** Original note dated 5-28-15 in the amount of $3,000,000.00.

**DESCRIPTION OF CHANGE IN TERMS.** Rate and payment amount change.

**PAYMENT.** Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on May 28, 2018. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning July 28, 2017, with all subsequent interest payments to be due on the same day of each month after that until this Agreement is paid in full.

**VARIABLE INTEREST RATE.** The interest rate on this loan is subject to change from time to time based on changes in an independent index which is the JP MORGAN CHASE (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each DAY. Borrower understands that Lender may make loans based on other rates as well. **The Index currently is 4.250% per annum.** Interest on the unpaid principal balance of this loan will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 4.750 percentage points over the Index, resulting in an initial rate of 9.000% per annum based on a year of 360 days. Under no circumstances will the interest rate on this loan be more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD.** Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in the loan documents.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS.**

**BORROWER:**

OFFSHORE MARINE CONTRACTORS, INC.

By: ______________________
RAIMY DUARD EYMARD, Executive Vice President/Secretary of OFFSHORE MARINE CONTRACTORS, INC.

By: ______________________
DAVID M. MAGGIO, President of OFFSHORE MARINE CONTRACTORS, INC.

LaserPro, Ver. 17.2.0.013 Copr. D+H USA Corporation 1997, 2017. All Rights Reserved. - LA C:\APPS\CFI\LPL\D20C.FC TR-16871

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,000,000.00 | 05-24-2018 | 06-02-2019 | 2098 | 80 | 50507558 | MOC | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

Borrower: OFFSHORE MARINE CONTRACTORS, INC. (TIN: 72-1446077)
133 W. 113TH STREET
CUT OFF, LA 70345

Lender: MISSISSIPPI RIVER BANK
MAIN OFFICE BRANCH-MOC
POST OFFICE BOX 607
BELLE CHASSE, LA 70037

Principal Amount: $2,000,000.00                     Date of Agreement: May 24, 2018

DESCRIPTION OF EXISTING INDEBTEDNESS. Original note dated 5-28-15 in the amount of $3,000,000.00.

DESCRIPTION OF COLLATERAL. Borrower acknowledges this Note is secured by various collateral. Collateral securing other loans with Lender may also secure this Note as the result of cross-collateralization.

DESCRIPTION OF CHANGE IN TERMS. Rate and payment amount change.

PAYMENT. Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on June 2, 2019. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning July 2, 2018, with all subsequent interest payments to be due on the same day of each month after that until this Agreement is paid in full.

VARIABLE INTEREST RATE. The interest rate on this loan is subject to change from time to time based on changes in an independent index which is the JP MORGAN CHASE (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each DAY. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 4.750% per annum. Interest on the unpaid principal balance of this loan will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 4.750 percentage points over the Index, resulting in an initial rate of 9.500% per annum based on a year of 360 days. Under no circumstances will the interest rate on this loan be more than the maximum rate allowed by applicable law.

INTEREST CALCULATION METHOD. Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in the loan documents.

CONTINUING VALIDITY. Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS.

BORROWER:

OFFSHORE MARINE CONTRACTORS, INC.

By: _____
RAIMY DUARD EYMARD , President/Treasurer of
OFFSHORE MARINE CONTRACTORS, INC.

By: _____
LOUIS J. EYMARD, II, Executive Vice-President of
OFFSHORE MARINE CONTRACTORS, INC.

By: _____
JORDAN R. ORGERON, Secretary of OFFSHORE
MARINE CONTRACTORS, INC.

LaserPro, Ver. 18.1.10.002 Copr. Finastra USA Corporation 1997, 2018. All Rights Reserved. - LA C:\APPS\CFI\LPL\D20C.FC TR-13268

## CHANGE IN TERMS AGREEMENT

| Principal $2,000,000.00 | Loan Date 05-30-2019 | Maturity 06-02-2020 | Loan No 2098 | Call / Coll 80 | Account 50507558 | Officer MOC | Initials |
|---|---|---|---|---|---|---|---|

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** OFFSHORE MARINE CONTRACTORS, INC. (TIN: 72-1446077)
133 W. 113TH STREET
CUT OFF, LA 70345

**Lender:** MISSISSIPPI RIVER BANK
MAIN OFFICE BRANCH-MOC
POST OFFICE BOX 607
BELLE CHASSE, LA 70037

---

Principal Amount: $2,000,000.00          Date of Agreement: May 30, 2019

DESCRIPTION OF EXISTING INDEBTEDNESS. Original note dated 5-28-15 in the amount of $3,000,000.00.

DESCRIPTION OF COLLATERAL. Borrower acknowledges this Note is secured by various collateral. Collateral securing other loans with Lender may also secure this Note as the result of cross-collateralization.

DESCRIPTION OF CHANGE IN TERMS. Rate and payment amount change.

PAYMENT. Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on June 2, 2020. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning July 2, 2019, with all subsequent interest payments to be due on the same day of each month after that until this Agreement is paid in full.

VARIABLE INTEREST RATE. The interest rate on this loan is subject to change from time to time based on changes in an independent index which is the JP MORGAN CHASE (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each DAY. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 5.500% per annum. Interest on the unpaid principal balance of this loan will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 4.750 percentage points over the Index, resulting in an initial rate of 10.250% per annum based on a year of 360 days. Under no circumstances will the interest rate on this loan be more than the maximum rate allowed by applicable law.

INTEREST CALCULATION METHOD. Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in the loan documents.

CONTINUING VALIDITY. Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS.

BORROWER:

OFFSHORE MARINE CONTRACTORS, INC.

By: _____
RAIMY DUARD EYMARD, President/Treasurer of
OFFSHORE MARINE CONTRACTORS, INC.

By: _____
LOUIS J. EYMARD, II, Executive Vice President of
OFFSHORE MARINE CONTRACTORS, INC.

By: _____
JORDAN R. ORGERON, Secretary of OFFSHORE
MARINE CONTRACTORS, INC.

LaserPro, Ver. 19.1.10.015 Copr. Finastra USA Corporation 1997, 2019. All Rights Reserved. - LA C:\APPSICFILPL\D200.FC TR-17802

# EXHIBIT 4

# MRB Letter Agreement

# Mississippi River Bank

Member F.D.I.C.

December 4, 2019

Offshore Marine Contractors, Inc
133 W 113th St
Cut Off, LA 70345

Dear Customers,

We have reviewed the Chapter 11 reorganization forecast model that you provided.  Assuming the bankruptcy court approves your request, Mississippi River Bank (MRB) will agree to the following with respect to your term loan and line of credit at MRB:

MRB has made the following term loans to OMCI ("Term Loans"):

*September 2, 2015 Promissory Note in the principal amount of $3,989,009.38, as modified by Change in Terms Agreements dated October 1, 2015, May 23, 2016, August 26, 2016, May 26, 2017, July 17, 2017, May 24, 2018 and May 30, 2019.*

*May 24, 2018 Promissory Note in the principal amount of $1,100,030.00, as modified by Change in Terms Agreement dated May 30, 2019.*

MRB continues to make loans to OMCI under the following revolving loan agreement ("Revolving Loan"):

*May 28, 2015 Promissory Note in the principal amount of $3,000,000.00, as modified by Change in Terms Agreements dated September 2, 2015 at which time the principal amount was reduced to $2,000,000.00, October 1, 2015, May 23, 2016, July 18, 2016, May 26, 2017, July 17, 2017, May 24, 2018 and May 30, 2019.*

OMCI has filed or will file for Chapter 11 Bankruptcy protection ("OMCI Bankruptcy") in the Bankruptcy Court for the Western District of Louisiana ("Bankruptcy Court").

OMCI and MRB desire to continue their relationship following the OMCI Bankruptcy under the terms of this letter.

MRB agrees that notwithstanding anything to the contrary herein, or in any of the notes, mortgages, security agreements or other documents associated with the Term Loans or the Revolving Loans or other loans from MRB to OMCI (the "Loan Documents"), (A) the OMCI Bankruptcy, whether by its filing, existence, continuation or otherwise, shall not constitute a default herein, or under any of the Loan Documents and (B) a chapter 11 plan proposed by OMCI may extend the maturity date of the Term and Revolving Loans from June 2, 2020 through June 2, 2021 (subject to rate adjustments and collection of

# Mississippi River Bank

Member F.D.I.C.

Pg2

the annual 1% origination fee on the line of credit).  Further, MRB agrees to continue its obligations under the Revolving Loan, including without limitation, its obligation to make advances under the

Revolving Loan under MRB's current lending parameters, which are subject to change from time to time, provided that (i) OMCI remains current on payments and other obligations required of it under the Loan Documents, subject only to the OMCI Bankruptcy not constituting a default, as provided herein; (ii) MRB is granted a post-petition security interest in OMCI accounts in the OMCI Bankruptcy as to such advances in addition to its continuing security interest in pre-petition accounts;  (iii) OMCI will continue to deposit all collections of accounts receivables into a  cash collateral account at MRB;  (iv)  this agreement is approved by the Bankruptcy Court in the OMCI Bankruptcy; and (v) OMCI continues operations as a debtor in possession in the OMCI Bankruptcy, and is in compliance with all orders issued by the Bankruptcy Court, including without limitation, operating as required under all approved budgets.

Please advise if you have any questions or need anything further.

Thanks,

Mike O'Connor
Vice President

# EXHIBIT 5

# Financing Budget

| | 12/8/2019 | 12/15/2019 | 12/22/2019 | 12/29/2019 | 1/5/2020 | 1/12/2020 | 1/19/2020 | 1/26/2020 | 2/2/2020 | 2/9/2020 | 2/16/2020 | 2/23/2020 | 3/1/2020 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Days Worked | 25 | 28 | 24 | 21 | 28 | 21 | 21 | 21 | 21 | 28 | 35 | 35 | 35 |
| **Inflows** | | | | | | | | | | | | | |
| Cash Input - Operating | | | | | | | | | | | | | 0 |
| Cash Input - CCA | 100 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | | | | | | | | | | | | | |
| Ineligible Collections/State of LA | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Anticipated Eligible Collections - Current | 0 | 0 | 484,764 | 656,698 | 494,562 | 59,450 | 420,946 | 32,093 | 686,164 | 0 | 79,658 | 0 | 778,735 |
| Anticipated Eligible Collections - Forecast | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 242,200 | 576,? |
| | | | | | | | | | | | | | |
| Anticipated Billing for Current Week | 555,763 | 0 | 433,522 | 0 | 408,800 | 0 | 410,000 | 0 | 0 | 403,200 | 0 | 520,500 | 0 |
| | | | | | | | | | | | | | |
| Accounts Receivable | 4,711,883 | 4,711,883 | 4,660,640 | 4,003,943 | 3,918,180 | 3,858,730 | 3,847,784 | 3,815,691 | 3,129,527 | 3,532,727 | 3,453,069 | 3,731,369 | 2,376,218 |
| LOC Eligible Borrowing Base ($2MM cap) | 886,755 | 886,755 | 1,729,766 | 1,204,408 | 1,638,596 | 1,591,036 | 1,629,839 | 1,604,164 | 1,527,839 | 1,850,399 | 1,786,673 | 2,000,000 | 947 |
| LOC Liability | 546,053 | 587,816 | 344,269 | 115,947 | (280,626) | 202,011 | (120,892) | 232,509 | (371,957) | (13,426) | (5,921) | 124,759 | (1,157,006) |
| LOC Available | 340,702 | 298,939 | 1,385,497 | 1,088,462 | 1,919,222 | 1,389,025 | 1,750,730 | 1,371,655 | 1,899,796 | 1,863,825 | 1,792,593 | 1,875,241 | 2,149,833 |
| | | | | | | | | | | | | | |
| Additional MRB LOC | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| Liquidity | 539,074 | 497,311 | 1,583,868 | 1,286,833 | 2,117,593 | 1,587,397 | 1,949,102 | 1,570,027 | 2,098,167 | 2,062,196 | 1,990,965 | 2,073,612 | 2,348,612 |
| | | | | | | | | | | | | | |
| **Disbursements** | | | | | | | | | | | | | |
| DIP Debt Service (MRB) | 0 | 0 | 0 | 0 | 44,100 | 0 | 0 | 0 | 44,100 | 0 | 0 | 0 | 44,100 |
| Operating Expenses | 0 | 42,550 | 37,400 | 33,075 | 82,500 | 53,425 | 53,425 | 53,425 | 52,875 | 62,000 | 51,275 | 51,275 | 71,725 |
| Operations Payroll | 0 | 134,255 | 0 | 0 | 135,987 | 0 | 153,586 | 0 | 145,463 | 0 | 160,592 | 0 | 153,764 |
| Fixed Costs | 41,763 | 64,413 | 390,975 | 47,500 | 58,468 | 27,638 | 178,113 | 21,000 | 101,543 | 25,163 | 161,013 | 21,000 | 101,143 |
| Other Payments | 0 | 0 | 0 | 17,415 | 221,032 | 16,981 | 370 | 7,274 | 14,550 | 0 | 0 | 21,000 | 0 |
| **Total Disbursements** | 41,763 | 241,218 | 428,375 | 97,990 | 542,087 | 98,044 | 385,494 | 81,699 | 358,531 | 87,163 | 372,880 | 72,275 | 370,792 |

## Debt Service and Adequate Protection

| | 12/8/2019 | 12/15/2019 | 12/22/2019 | 12/29/2019 | 1/5/2020 | 1/12/2020 | 1/19/2020 | 1/26/2020 | 2/2/2020 | 2/9/2020 | 2/16/2020 | 2/23/2020 | 3/1/2020 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Vessel Debt Service** | | | | | | | | | | | | | |
| LB Olivia Principal (Regions) | | | | | | | | | | | | | |
| LB Olivia Interest (Regions) | | | | | | | | | | | | | |
| LB Tobie Principal (Regions) | | | | | | | | | | | | | |
| LB Tobie Interest (Regions) | | | | | | | | | | | | | |
| LB Raimy Principal (CAT) | | | | | | | | | | | | | |
| LB Raimy Interest (CAT) | | | | | | | | | | | | | |
| LB Lacie G Eymard Principal (Regions) | | | | | | | | | | | | | |
| LB Lacie G Eymard Interest (Regions) | | | | | | | | | | | | | |
| LB Lucas Bourg Principal (Glencor/Midsouth) | | | | | | | | | | | | | |
| LB Lucas Bourg Interest (Glencor/Midsouth) | | | | | | | | | | | | | |
| LB Michael Eymard Principal (Glencor/Midsouth) | | | | | | | | | | | | | |
| LB Michael Eymard Interest (Glencor/Midsouth) | | | | | | | | | | | | | |
| LB Jamie Eymard Principal (Glencor/Wells Fargo) | | | | | | | | | | | | | |
| LB Jamie Eymard Interest (Glencor/Wells Fargo) | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| **Other Debt Service** | | | | | | | | | | | | | |
| MRB AR LOC Interest | | | | | 5,000 | | | | 5,000 | | | | 5,000 |
| MRB AP Loan Interest | | | | | 3,550 | | | | 3,550 | | | | 3,550 |
| MRB AP Loan Pricipal | | | | | 35,550 | | | | 35,550 | | | | 35,550 |
| Office/Warehouse Principal | | | | | | | | | | | | | |
| Office/Warehouse Interest | | | | | | | | | | | | | |
| Scott Financial | | | | | | | | | | | | | |
| Paccar Financial | | | | | | | | | | | | | |
| Komatsu Financial | | | | | | | | | | | | | |
| Avis Bourg Buy Out Principal | | | | | | | | | | | | | |
| Avis Bourg Buy Out Interest | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| **Total Debt Service** | $0 | $0 | $0 | $0 | $44,100 | $0 | $0 | $0 | $44,100 | $0 | $0 | $0 | $44,100 |

| Accounts Payable Liftboat Expenses | 12/8/19 | 12/15/19 | 12/22/19 | 12/29/19 | 1/5/20 | 1/12/20 | 1/19/20 | 1/26/20 | 2/2/20 | 2/9/20 | 2/16/20 | 2/23/20 | 3/1/20 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **PAYMENT OF EXPENSES** | | | | | | | | | | | | | |
| **Expenses Description** | | | | | | | | | | | | | |
| **Vessels** | | | | | | | | | | | | | |
| Lacie G Eymard | 6,755 | 6,755 | 6,755 | 6,755 | 700 | 700 | 700 | 700 | 700 | 6,755 | 6,755 | 6,755 | 6,755 |
| Jamie G Eymard | 6,755 | 6,755 | 6,755 | 6,755 | 6,755 | 6,755 | 6,755 | 6,755 | 6,755 | 6,755 | 6,755 | 6,755 | 6,755 |
| Raimy Eymard | 6,755 | 6,755 | 6,755 | 6,755 | 6,755 | 700 | 700 | 700 | 700 | 700 | 6,755 | 6,755 | 6,755 |
| Tobie Eymard | 700 | 700 | 700 | 700 | 6,755 | 6,755 | 6,755 | 6,755 | 6,755 | 6,755 | 6,755 | 6,755 | 6,755 |
| Michael Eymard | 4,160 | 6,755 | 3,295 | 700 | 6,755 | 6,755 | 6,755 | 6,755 | 6,755 | 6,755 | 6,755 | 6,755 | 6,755 |
| Olivia Grace | 700 | 700 | 700 | 700 | 6,755 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 |
| **Other Operating Expenses** | | | | | | | | | | | | | |
| Communications | 12,550 | - | - | - | 19,800 | - | - | - | 19,800 | - | - | - | 19,800 |
| Repair Maintenance | - | 14,130 | 12,440 | 10,710 | 14,280 | 11,060 | 11,060 | 11,060 | 10,710 | 13,580 | 16,800 | 16,800 | 17,150 |
| USCG Maintenance | - | - | - | - | 20,000 | 20,000 | 20,000 | 20,000 | - | 20,000 | - | - | - |
| **Total Payment** | - | 42,550 | 37,400 | 33,075 | 82,500 | 53,425 | 53,425 | 53,425 | 52,875 | 62,000 | 51,275 | 51,275 | 71,425 |

Operating Expenses

Case 19-13253 Doc 22 Filed 12/05/19 Entered 12/05/19 14:12:39 Main Document Page 52 of 54

**Liftboat Payroll - (Includes Payroll Taxes)**

| End of Week / Vessel Name | 12/8/19 | 12/15/19 | 12/22/19 | 12/29/19 | 1/5/20 | 1/12/20 | 1/19/20 | 1/26/20 | 2/2/20 | 2/9/20 | 2/16/20 | 2/23/20 | 3/1/20 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Lacie G Eymard | 14,694 | 14,694 | 14,694 | 14,694 | 3,391 | 3,391 | 3,391 | 3,391 | 3,391 | 14,694 | 14,694 | 14,694 | 14,694 |
| Jamie G Eymard | 14,694 | 14,694 | 14,694 | 14,694 | 14,694 | 14,694 | 14,694 | 14,694 | 14,694 | 14,694 | 14,694 | 14,694 | 14,694 |
| Raimy Eymard | 14,694 | 14,694 | 14,694 | 14,694 | 14,694 | 3,391 | 3,391 | 3,391 | 3,391 | 3,391 | 14,694 | 14,694 | 14,694 |
| Tobie Eymard | 3,391 | 3,391 | 3,391 | 3,391 | 14,694 | 14,694 | 14,694 | 14,694 | 14,694 | 14,694 | 14,694 | 14,694 | 14,694 |
| Michael Eymard | 9,850 | 14,694 | 8,235 | 3,391 | 14,694 | 14,694 | 14,694 | 14,694 | 14,694 | 14,694 | 14,694 | 14,694 | 14,694 |
| Olivia Grace | 3,391 | 3,391 | 3,391 | 3,391 | 3,391 | 3,391 | 3,391 | 3,391 | 3,391 | 3,391 | 3,391 | 3,391 | 3,391 |
| US Coast Guard Inspection | - | - | - | - | 13,650 | 13,650 | 13,650 | 13,650 | - | 13,650 | - | - | - |
| **Total Expenses** | | 134,255 | | | 135,987 | | 153,586 | | 145,463 | | 160,592 | | 153,724 |

Operations Payroll

| Fixed (Scheduled) Expenses | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Description | 12/8/2019 | 12/15/2019 | 12/22/2019 | 12/29/2019 | 1/5/2020 | 1/12/2020 | 1/19/2020 | 1/26/2020 | 2/2/2020 | 2/9/2020 | 2/16/2020 | 2/23/2020 | 3/1/2020 |
| **Overhead Payroll** | | | | | | | | | | | | | |
| Kim Pitre | | 4,000 | | | 4,000 | | 4,000 | | 4,000 | | 4,000 | | 4,000 |
| Jordan Orgeron | | 4,000 | | | 4,000 | | 4,000 | | 4,000 | | 4,000 | | 4,000 |
| Kurt Luwisch | | 4,733 | | | 4,733 | | 4,733 | | 4,733 | | 4,733 | | 4,733 |
| Avis Bourg III | | 6,560 | | | 6,560 | | 6,560 | | 6,560 | | 6,560 | | 6,560 |
| Bevelry Eymard | | 3,125 | | | 3,125 | | 3,125 | | 3,125 | | 3,125 | | 3,125 |
| Louis Eymard | | 4,250 | | | 4,250 | | 4,250 | | 4,250 | | 4,250 | | 4,250 |
| Raimy Eymard | | 4,250 | | | 4,250 | | 4,250 | | 4,250 | | 4,250 | | 4,250 |
| Rory Vanhaverbeke | | 5,000 | | | 5,000 | | 5,000 | | 5,000 | | 5,000 | | 5,000 |
| Brady Antill | | 3,667 | | | 3,667 | | 3,667 | | 3,667 | | 3,667 | | 3,667 |
| Michael Bruce | | 3,000 | | | 3,000 | | 3,000 | | 3,000 | | 3,000 | | 3,000 |
| Joseph Theriot | | 2,667 | | | 2,667 | | 2,667 | | 2,667 | | 2,667 | | 2,667 |
| Junior Benavidez | | 1,125 | | | 1,125 | | 1,125 | | 1,125 | | 1,125 | | 1,125 |
| Mitch Orgeron | | 3,333 | | | 3,333 | | 3,333 | | 3,333 | | 3,333 | | 3,333 |
| **Overhead Payroll** | - | 49,710 | - | | 49,710 | - | 49,710 | - | 49,710 | - | 49,710 | - | 49,710 |
| **Other Payroll Expenses** | | | | | | | | | | | | | |
| Payroll Taxes | - | 3,803 | - | | 3,803 | - | 3,803 | - | 3,803 | - | 3,803 | - | 3,803 |
| Other Benefits | - | - | - | | - | - | - | - | - | - | - | - | - |
| **Insurance** | | | | | | | | | | | | | |
| United Health | 29,151 | - | - | - | - | 16,500 | - | - | - | 16,500 | - | - | - |
| HSA Contribution Cards | 1,200 | - | - | 2,500 | - | - | - | - | 2,500 | - | - | - | 2,500 |
| Lincoln Health Insurance | - | 4,000 | - | - | - | - | 4,000 | - | - | - | 4,000 | - | - |
| Washington National Insurance - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Workers Compensation | - | - | - | - | - | 4,238 | - | - | - | 4,238 | - | - | - |
| Aflac Group | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Wright National Flood | - | - | - | - | 1,060 | - | - | - | 1,060 | - | - | - | 1,060 |
| Progressive Insurance | - | - | - | - | 271 | - | - | - | 271 | - | - | - | 271 |
| COBRA | - | - | - | - | 100 | - | - | - | 100 | - | - | - | 100 |
| OMC Commercial schedule | - | - | 5,167 | - | - | - | - | - | - | - | - | - | - |
| Hull & PI Insurance | - | - | 368,208 | - | - | - | - | - | - | - | - | - | - |
| **Benefits** | | | | | | | | | | | | | |
| Fidelity - Employee Contributio | 10,278 | 4,000 | | 4,000 | | 4,000 | | 4,000 | | 4,000 | | 4,000 | |
| **Other Expenses** | | | | | | | | | | | | | |
| Phone & Internet | | | | | | | | | | | | | |
| Vision Comm | - | 1,700 | - | - | - | 1,700 | - | - | - | - | 1,700 | - | - |
| Directv | 441 | 1,200 | - | - | - | 1,200 | - | - | - | - | 1,200 | - | - |
| Verizon Wireless | - | - | - | 1,000 | - | - | - | - | 1,000 | - | - | - | 1,000 |
| Utilities | | | | | | | | | | | | | |
| Entergy | - | - | 5,000 | - | - | - | - | 5,000 | - | - | - | 5,000 | - |
| Laf. Par. Water | 68 | - | - | - | 400 | - | - | - | - | 400 | - | - | - |
| Lexie Water | 25 | - | - | - | 25 | - | - | - | 25 | - | - | - | - |
| Vehicle Expense | | | | | | | | | | | | | |
| Enterprise FM | - | - | 5,500 | - | - | - | - | 5,500 | - | - | - | 5,500 | - |
| Fuel | - | - | 1,500 | - | - | - | - | 1,500 | - | - | - | 1,500 | - |
| Trash Service | - | - | - | - | 350 | - | - | - | 350 | - | - | - | - |
| Canon Solutions | - | - | - | - | 150 | - | - | - | 150 | - | - | - | - |
| Sales Tax | - | - | 5,000 | - | - | - | - | 5,000 | - | - | - | 5,000 | - |
| Payroll Fees | - | - | - | - | 2,000 | - | - | - | 2,000 | - | - | - | 2,000 |
| Martin Bohman - Legal Fees | | | | | | | | | | | | | |
| Miscellaneous Supplies (AMEX) | - | - | - | 40,000 | - | - | - | - | 40,000 | - | - | - | 40,000 |
| Janitor | 600 | - | 600 | - | 600 | - | - | - | 600 | - | 600 | - | 600 |
| Maintenance and Cure | | | | | | | | | | | | | |
| US Trustee Fee | | | | | | | 20,000 | | | | | | |
| Legal Fees | - | - | - | - | - | - | 100,000 | - | - | - | 100,000 | - | |
| **Total Expenses** | 41,763 | 64,413 | 390,975 | 47,500 | 58,468 | 27,638 | 178,113 | 21,000 | 101,543 | 25,163 | 161,013 | 21,000 | 101,043 |

# Fixed Costs

## Other Payments

| Accounts Payable Liftboat Expenses | 12/8/19 | 12/15/19 | 12/22/19 | 12/29/19 | 1/5/20 | 1/12/20 | 1/19/20 | 1/26/20 | 2/2/20 | 2/9/20 | 2/16/20 | 2/23/20 | 3/1/20 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Lafourche Parish Sheriff Office | | | | 17,415 | | | | | | | | | |
| Bluetide Communications | | | | | 33,482 | | 370 | | 14,550 | | | | |
| Encore Food Services | | | | | 168,007 | 16,981 | | 7,274 | | | | | |
| Go Marine Services | | | | | 19,544 | | | | | | | | |
| Other Payments | - | - | - | 17,415 | 221,033 | 16,981 | 370 | 7,274 | 14,550 | - | - | - | - |