**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **In re** | ) | **Case No. 19-13253** |
| | ) | |
| **Offshore Marine Contractors, Inc.,** | ) | **Chapter 11** |
| | ) | |
| **Debtor.** | ) | **Section B** |
| | ) | |
| | ) | |

*EX PARTE* **APPLICATION TO EMPLOY STOUT RISIUS ROSS, LLC AS**
**FINANCIAL ADVISOR TO THE DEBTOR-IN-POSSESSION**

Bankruptcy Code section 327(a) allows the debtor-in-possession ("DIP") to employ professionals to represent and assist it in carrying out its duties, so long as the professionals to be employed are "disinterested" and "do not hold or represent an interest adverse to the estate." Offshore Marine Contractors, Inc. (the "Debtor") submits this *ex parte* application (the "Application") seeking authority to employ John D. Baumgartner and Stout Risius Ross, LLC ("Stout" or "Applicant") as financial advisor to the Debtor effective *nunc pro tunc* to December 19, 2019. In support of this Application, the Debtor respectfully states as follows:

1.     This case was filed on December 4, 2019 (the "Petition Date") by the Debtor. [P-1]. The Debtor continues to operate its business and manage its property as a DIP pursuant to 11 U.S.C. §§ 1107 and 1108. No trustee or examiner has been requested or appointed, and no official committee of creditors or equity interest holders has been established.

2.     This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This Application is submitted pursuant to Bankruptcy Code section 327(a), Bankruptcy Rules 2014 and 2016, Local Rule 2014-1, and this

1

Court's General Order 2019-4, *General Order Regarding Procedures for Complex Chapter 11 Cases*.

3.      The Debtor seeks to employ John D. Baumgartner and Stout to provide the Debtor with financial advice and various services with respect to the Debtor's operations and restructuring efforts.   The Debtor selected Stout to serve as its financial advisor on December 19, 2019. Attached as **Exhibit "A"** is the Rule 2014(a) verified statement of John D. Baumgartner setting forth Stout's "connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee."

4.      Attached as **Exhibit "B"** is a list of parties included in Stout's conflicts check. Attached as **Exhibit "C"** is a list detailing the results of Stout's conflicts check, which further outlines Stout's connections with the Debtor and other parties in interest in this case.

5.      Attached as **Exhibit "D"** is the Debtor's proposed order employing Stout as its financial advisor.   Attached as **Exhibit "E"** is the proposed Engagement Letter between Stout and the Debtor.

6.      Rule 2014(a) requires that this application evidence (a) the specific facts showing the necessity for the employment, (b) the name of the person to be employed, (c) the reasons for the selection, (d) the professional services to be rendered, (e) any proposed arrangement for compensation, and, (f) to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

        a.   The Debtor will face multiple scenarios during its reorganization efforts that it anticipates will either require or benefit greatly from the assistance of a financial advisor.

b. The Debtor seeks to employ John D. Baumgartner and the financial advisors of Stout Risius Ross, LLC.

c. The Debtor has selected Stout for several reasons, including its skill and reputation in the industry as financial advisors that are well-equipped to assist in the successful reorganization of entities in chapter 11 such as the Debtor. Stout has extensive experience in providing financial advisory services in connection with bankruptcy proceedings and is particularly well qualified for the services which are required by the Debtor. Accordingly, the Debtor believes Stout possesses the requisite expertise and background to handle matters that are likely to arise in this case.

d. Stout will handle all matters in this proceeding that should be handled by financial advisors for a debtor-in-possession.

e. Stout will provide services related to its role as the Debtor's financial advisor at the hourly rates shown below:

| Individual | Hourly Rate |
|---|---|
| John D. Baumgartner-Managing Director | $450.00 |
| Ann Huynh-Director | $390.00 |
| Ramiro Balladares-Manager | $275.00 |
| Hayden Hill, Associate | $235.00 |

f. To the best of John D. Baumgartner's knowledge, Stout has no connection with the Debtor, its creditors or any other party-in-interest, their respective attorneys and accountants, the United States Trustee or any person employed in the office of the United States Trustee other than connections within the past three years with the Internal Revenue Service, the United States Trustee, Wells Fargo, Baker Donelson, Lugenbuhl, Wheaton, Peck, Rankin & Hubbard, LLP, Liskow & Lewis, and Motion Industries. None of these connections involved the Debtor or the Debtor's affiliates. *See* **Exhibit "C."**

7. Any fees for services and amounts for reimbursement of expenses incurred will be applied for pursuant to 11 U.S.C. §§ 330 and 331, the Federal Rules of Bankruptcy Procedure, this Court's Local Rules, and Section XIII of this Court's General Order 2019-4, *General Order Regarding Procedures for Complex Chapter 11 Cases*.

8. Under this Court's Local Rule 2014-1(B)(3), a request for interim employment may be filed *ex parte* on seven (7) days' notice to the United States Trustee, all known secured and priority claimants, and the twenty (20) largest unsecured creditors. Further, Rule 2014-1(B)(3)

3

provides that an application for final approval of employment requires twenty-one (21) days' notice to all persons on the mailing list, as well as the United States Trustee.

9. This *ex parte* Application, the verified statement of John D. Baumgartner, and proposed order have been served on the entire mailing list in this case, including (a) the United States Trustee, (b) all secured creditors, (c) the twenty (20) largest unsecured creditors, (d) the United States Attorney, (e) all parties having requested notice, (f) all committees, and (g) their respective counsel.

10. If a party wishes to oppose the Application, the opponent must file a written objection and set the opposition for hearing on an expedited basis after contacting chambers for a hearing date pursuant to Local Rule 2014-1.

**WHEREFORE**, the Debtor respectfully requests that it (i) immediately be authorized to employ Stout to assist the Debtor as its financial advisor on an interim basis under the terms requested herein, (ii) that the Court enter a final order authorizing Stout's employment upon the expiration of twenty-one (21) days following the filing of this Application, and (iii) that the Court grant such other relief as it may deem appropriate.

**Signature on Following Page**

Respectfully Submitted,

**STEWART ROBBINS BROWN & ALTAZAN, LLC**
301 Main Street, Suite 1640
P. O. Box 2348
Baton Rouge, LA  70821-2348
(225) 231-9998 Telephone
(225) 709-9467 Fax

By:     /s/ *Paul Douglas Stewart, Jr.*
        Paul Douglas Stewart, Jr. (La. #24661)(T.A.)
        dstewart@stewartrobbins.com
        Brandon A. Brown (La. #25592)
        bbrown@stewartrobbins.com
        Brooke W. Altazan (La. #32796)
        baltazan@stewartrobbins.com

        *Proposed Counsel for Offshore Marine*
        *Contractors, Inc.*

5

**EXHIBIT A**
**VERIFIED STATEMENT**

## STATEMENT UNDER PENALTY OF PERJURY
## OF JOHN D. BAUMGARTNER
## PURSUANT TO BANKRUPTCY CODE §§ 327(a), 329 AND 504,
## AND BANKRUPTCY RULES 2014(a) AND 2016(b)

John D. Baumgartner hereby states under penalty of perjury:

1.      I am a Managing Director of Stout Risius Ross, LLC ("Stout").  I maintain an office at 1000 Main Street, Suite 3200, Houston, Texas, 77002.

2.      To the best of my knowledge, the following statements with regard to Stout and the connections of Stout with the relevant entities are true.

3.      Stout has never represented creditors, equity interest holders, or any other party in interest in connection with the Debtor's bankruptcy, other than connections or relationships within the past three years with the Internal Revenue Service, the United States Trustee, Wells Fargo, Baker Donelson, Lugenbuhl, Wheaton, Peck, Rankin & Hubbard, LLP, Liskow & Lewis, and Motion Industries.  None of these connections or relationships involved the Debtor or any of its affiliates.

4.      Stout has never represented a professional employed in the Debtor's bankruptcy case, and Stout will not represent any such entities in connection with the Debtor's bankruptcy case.

5.      Stout has no connection, to the best of its knowledge, with persons employed in any office of the United States Trustee except for a relationship or connection with the office of the United States Trustee within the past three years in matters unrelated to the Debtor, its affiliates, and this case.

6.      Stout and its members and employees are not related to, nor do they have any connections with, judges of the Court to which this case is assigned.

7.      Based on my own personal knowledge, the following statements are, to the best of my knowledge, true:

a.      Stout is a disinterested person as defined in 11 U.S.C. § 101(14).

b.      Stout does not have a prepetition claim or any other claim against the Estate.

1

      c.      Stout holds no equity interest in the Debtor.

      d.      Neither Stout nor its members, shareholders, or employees:

      (i)      are insiders of the Debtor as defined in 11 U.S.C. § 101(31)(b);

      (ii)      are investment bankers for any outstanding security of the Debtor;

      (iii)      have ever been counsel to an investment banker in connection with the offer, sale, or issuance of a security of the Debtor;

      (iv)      have been, within two years before the petition date, a director, officer or employee of the Debtor, or an investment banker for an outstanding security of the Debtor.

12.      Neither Stout nor its shareholders and employees hold or represent any interest adverse to the Estate.

13.      Neither Stout nor its shareholders and employees have an interest materially adverse to the interests of the Estate of the Debtor or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor or an investment banker of any security of the Debtor or for any other reason.

14.      The Application to employ Stout shows the hourly fees to be charged to the Debtor for providing financial advice to the Debtor.  Other professionals or employees may be utilized if necessary at the customary charge that such professionals charge other clients of the firm. Additionally, the firms' rates are subject to reasonable and periodic increases from year to year. Stout will charge to the Debtor all costs and advances, subject to the limitation of the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules and orders of this Court, and the United States Trustee *Guidelines for Reviewing Applications for Compensation filed under 11 U.S.C. § 330 in Larger Chapter 11 Cases by Those Seeking Compensation Who Are Not Attorneys*.  The hourly rates charged by Stout professionals differ

2

based on, among other things, the professional's level of experience. Stout does not charge different billing rates based on the geographic location of the bankruptcy case.

15. The Debtor has also agreed to reimburse Stout for its actual and necessary expenses, subject to the limitation of the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules and orders of this Court, and the United States Trustee's *Guidelines for Reviewing Applications for Compensation filed under 11 U.S.C. § 330 in Larger Chapter 11 Cases by Those Seeking Compensation Who Are Not Attorneys*.

16. I have read the Application and the statements made therein are true and correct to the best of my knowledge, information and belief under penalty of perjury.

John D. Baumgartner

Dated: December 26, 2019

**EXHIBIT B**
**LIST OF PARTIES INCLUDED IN CONFLICTS CHECK**

## Parties Included in Conflicts Check

The following parties were included in the conflict check.

**The Debtor and Affiliates**
Offshore Marine Contractors, Inc.

**Equity Holders**
Louis J. Eymard, II
Michael M. Eymard
Raimy D. Eymard

**Lenders to the Debtor**
Wells Fargo
Caterpillar Financial Services
Bluehenge Capital Secured Debt SBIC
Mississippi River Bank

**Top 20 Unsecured Creditors**
Acadiana Hydraulic Works, Inc.
Bluetide Communications
Encore Food Services
Extreme Welding Services, LLC
Gator Rigging, Inspection, Testing
Glencore, Inc.
Global Data Systems, Inc.
Go Marine Services
Gulf Crane Services, Inc.
Marine Industrial Fabricators
Motion Industries
Parkway Services Group
Paul's Agency
Provisions Energy & Marine Support
Quality Paint & Supply
Schambo Manufacturing, LLC
Sewart Supply, Inc.

**Professionals**
Stewart Robbins Brown & Altazan, LLC
Baker Donelson
Lugenbuhl, Wheaton, Peck, Rankin & Hubbard, LLP
Robert L. Marrero, LLC
Staines, Eppling Law Corporation
Liskow & Lewis
Bowman Morse

**Governmental Agencies Appearing in or Related to the Cases**
Lafourche Parish Sheriff's Office
Lafourche Parish
Internal Revenue Service

**Other Parties**
The U.S. Trustee
The Honorable Jerry Brown, Bankruptcy Judge for the Eastern District of Louisiana
Beverly Eymard, LLC
CTD Legacy, LLC

**EXHIBIT C**
**CONFLICTS CHECK RESULTS**

## Results of Conflicts Check

The list below details the Potentially Interested Parties with which Stout has, or had within the past three years, a relationship or connection.  None of the relationships or connections involved the Debtor or its affiliates.

Internal Revenue Service
The U.S. Trustee
Wells Fargo
Baker Donelson
Lugenbuhl, Wheaton, Peck, Rankin & Hubbard, LLP
Liskow & Lewis
Motion Industries

**EXHIBIT D**
**PROPOSED ORDER**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **In re** | ) | **Case No. 19-13253** |
| | ) | |
| **Offshore Marine Contractors, Inc.,** | ) | **Chapter 11** |
| | ) | |
| **Debtor.** | ) | **Section B** |
| | ) | |
| | ) | |

**[PROPOSED] INTERIM ORDER AUTHORIZING EMPLOYMENT**
**OF STOUT RISIUS ROSS, LLC AS**
**FINANCIAL ADVISOR FOR DEBTOR-IN-POSSESSION**

**CONSIDERING** the Ex Parte *Application to Employ Stout Risius Ross, LLC as Financial Advisor* [P-____] (the "Application") filed by the Debtor to employ Stout Risius Ross, LLC ("Applicant") and applicable law:

**IT IS ORDERED** that the debtor in possession is authorized to retain Applicant effective *nunc pro tunc* to December 19, 2019 as its financial advisor in all matters relating to the above-captioned case.

**IT IS FURTHER ORDERED** that this Order does not approve specific hourly rates for the Applicant.  Applicant shall be entitled to receive reasonable compensation and reimbursement of actual, necessary expenses pursuant to 11 U.S.C. §§ 330 and 331, the Federal Rules of Bankruptcy Procedure, this Court's Local Rules, and Section XIII of this Court's General Order 2019-4, *General Order Regarding Procedures for Complex Chapter 11 Cases*.

**IT IS FURTHER ORDERED** that the Debtor may execute the Engagement Letter attached to the Application and take any other action reasonably necessary to effectuate the terms of the engagement.

**IT IS FURTHER ORDERED** that if no party timely objects to the Application, this Order shall become final for approval of employment of Applicant upon the expiration of twenty-one (21) days following service of the Application.

**IT IS FURTHER ORDERED** that Applicant shall serve this Order on the required parties who will not receive notice through the ECF system pursuant to the Federal Rules of Bankruptcy Procedure and the Local Rules and file a certificate of service to that effect within three (3) days.

**EXHIBIT E**

**PROPOSED ENGAGEMENT LETTER**



**PRIVILEGED AND CONFIDENTIAL**

December 19, 2019

Raimy Eymard
Offshore Marine Contractors, Inc.
133 West 113th Street
Cut Off, Louisiana 70345

RE:     Offshore Marine Contractors, Inc.

Dear Mr. Eymard:

Thank you for selecting Stout Risius Ross, LLC ("Stout") to provide financial advisory services to Offshore Marine Contractors, Inc. ("OMC" or the "Company") in connection with a restructuring of the Company's operations (the "Engagement").  This letter shall confirm our understanding of our agreement (the "Engagement Letter").

<u>*Objectives and Scope*</u>

We will perform services or tasks requested by you that are within our scope of practice.  While our work may involve analysis of accounting records and other financial information, our engagement does not include an audit in accordance with generally accepted auditing standards.  We expect to perform the services described below as requested by management and counsel.

  a. Advise the Company regarding reorganization strategies and alternatives
  b. Assist with the development of a plan of reorganization
  c. Preparation of cash forecasts and pro forma projections
  d. Assistance with preparation of monthly operating reports
  e. Preparation of schedules, analyses and projections to support a plan of reorganization
  f. Provide testimony

If requested by counsel or company management, we may provide additional services including:

  g. Review of the Company's financial information, including, but not limited to, analyses of cash receipts and disbursements
  h. Analysis of assumption and rejection issues regarding executory contracts and leases
  i. Review and analysis of the Company's proposed business plan
  j. Assistance in preparing and/or reviewing documents necessary for confirmation
  k. Advise and assist the Company, management and counsel in negotiations and meetings with the lender, investors and other interested parties
  l. Assist with the claims resolution procedures, including, but not limited to, analyses of creditors' claims by type and entity
  m. Determination of the Company's enterprise value as of the petition date and as of the effective date of a Chapter 11 plan of reorganization (the "Valuation Dates")
  n. Determination of asset and liquidation valuations

Raimy Eymard
December 19, 2019
Page 2

      o.   Other such functions as requested by management or counsel to assist in the Chapter 11 case.

Services performed for the Company pursuant to this Engagement will be performed in a manner consistent with a reasonable level of care and skill exercised by other professional consultants engaged in the same profession and working under similar circumstances.

The services listed above are representative and as the engagement proceeds, some may not be relevant and others may be added. If the company requires a Chief Restructuring Officer, we will require a separate engagement letter, however we can perform both roles as needed.

The scope of our services may be expanded from time to time, provided that we and you mutually agree in writing to any such expansion and any corresponding increase in fees.

*Staffing*

This engagement will be under the overall supervision of John D. Baumgartner. He will be assisted by Ann Huynh and others as needed. In the event it becomes necessary to reassign this engagement to another professional, we will notify you promptly and give you an opportunity to evaluate with us the appropriate professional whose skill sets and experience most closely match the requirements of the engagement.

*Your Responsibilities*

To help maximize the value of our work and to keep the project on schedule, you agree to satisfy our reasonable requests and to provide us timely access to all information and locations reasonably necessary to the performance of our services.

The successful delivery of our services, and the fees charged, are dependent on (i) your timely and effective completion of your responsibilities, (ii) the accuracy and completeness of the assumptions and information provided to us, and (iii) timely decisions and required approvals by you and/or your representatives.

You agree to promptly seek approval of the employment of Stout in accordance with the terms of this Engagement letter and the attached Professional Terms, or on terms otherwise acceptable to us upon the filing of the Bankruptcy Case, and to provide a draft of those papers to us for comment reasonably in advance of filing with the court.

The Company acknowledges and agrees that the terms and conditions of its engagement of Stout are reasonable, that the services to be rendered by Stout are necessary, and that based upon the nature and extent of such services, the time to be spent by Stout on the engagement, and the cost of comparable services, all of the fees, compensation, reimbursement and indemnification payable hereunder are reasonable and necessary.

Raimy Eymard
December 19, 2019
Page 3

*Fees and Expenses*

Due to the unique facts and circumstances of this Matter, Stout has agreed to the following hourly rates for our professionals.

| Professional | Level | Rates |
|---|---|---|
| John D. Baumgartner | Managing Director | $450 per hour |
| Ann Huynh | Director | $390 per hour |
| Ramiro Balladares | Manager | $275 per hour |
| Hayden Hill | Associate | $235 per hour |

Our standard hourly rates are reconsidered annually with changes effective October 1st of each year.

Out-of-pocket expenses (including transportation, lodging, meals, communications, supplies, research charges, copying, matter-related legal or professional fees, etc.) will be billed at the actual amounts incurred. Invoices for fees and out-of-pocket expenses are anticipated to be billed on a monthly basis. Our invoices are due upon presentation. Amounts remaining overdue for more than 30 days will be subject to a late charge of 1.5% per month from the date of invoice. We reserve the right to suspend services if invoices are not promptly paid, in which event we will not be responsible or liable for any resulting loss, damage or expense connected with such suspension.

Additionally, in the event we are required to respond to a subpoena (e.g., producing documents in our possession, providing testimony, cooperating with your legal counsel, etc.) related to this engagement (regardless of whether such subpoena is served during or subsequent to the completion of our work), we will invoice you at our standard hourly rates applicable at the time such services are rendered. We will also invoice you for our related out-of-pocket expenses, including, but not limited to, copying charges, courier fees, travel expenses and attorney fees.

*Wire Transfer*

All payments required hereunder shall be paid by wire transfer unless otherwise permitted by us. Set forth below are our funds transfer instructions:

Stout Risius Ross, LLC
BMO Harris Bank

ACH & Wire ABA Number: 071000288
Account Number:  3998895

*Disclosures*

We have represented, and will in the future represent, many different clients with various business interests in numerous industries. These clients are often referred to us by intermediaries such as lawyers, investment bankers, lenders and accountants ("Referral Sources"). In undertaking the Engagement, our objective is to provide services to you to the best of our ability, but without precluding us from representing other clients or from accepting referrals from or making referrals to Referral Sources. Since we want you to be comfortable with the retention of Stout in light of other client and Referral Sources relationships, we make the following disclosures, based on the information provided by you with an interest in the Engagement:

**Investment Banking | Valuation Advisory | Dispute Consulting | Management Consulting**

Raimy Eymard
December 19, 2019
Page 4

NONE

We agree to update the disclosure information from time to time if and when additional material parties with an interest in or a relationship with you are identified by you, in writing, to us.

As a specific condition to our undertaking the Engagement, you acknowledge the potential conflicts of interest inherent in the above disclosures and waive any conflict of interest or similar claim related to such disclosures.

### _Professional Terms_

The attached Professional Terms apply to this engagement.

\*   \*   \*   \*   \*   \*

Raimy Eymard
December 19, 2019
Page 5

Please indicate your agreement with the terms of this letter (including the Professional Terms), by signing and returning to me the enclosed copy of this letter.  We appreciate the opportunity to be of service to you and look forward to working with you on this important project.   Please note that this offer will terminate 60 days from the date of this letter, and shall be of no further force or effect unless expressly reinstated by us.

Very truly yours,

**STOUT RISIUS ROSS, LLC**

By:    _____

Attachments:    Professional Terms

Acknowledged and Accepted:

**Offshore Marine Contractors, Inc.**

Signed:_____

Name:

Title:    _____

Date:    _____

# STOUT RISIUS ROSS, LLC
# PROFESSIONAL TERMS

**1.  Our Services**  We will provide the services as described in our engagement letter, as may be modified from time to time by mutual consent.

**2.  Independent Contractor**  We are an independent contractor and not your employee, agent, joint venturer or partner, and will determine the method, details and means of performing our services.  We assume full and sole responsibility for the payment of all compensation and expenses of our employees and for all of their state and federal income tax, unemployment insurance, Social Security, disability insurance and other applicable employee withholdings.

**3.  Fees and Expenses**  Our fees, out-of-pocket expenses, and payment terms are set out in our engagement letter.  Those fees do not include taxes.  You will be responsible for and pay all applicable sales, use, excise, value added and other taxes associated with the provision or receipt of the services, excluding taxes on our income generally.

**4.  Confidentiality**  With respect to any information supplied in connection with this engagement and designated by any party as confidential, or which the other party(s) should reasonably believe is confidential based on its subject matter or the circumstances of its disclosure, the other party(s) agree to protect the confidential information in a reasonable and appropriate manner, and use confidential information only to perform its obligations under this engagement and for no other purpose.  This will not apply to information which is: (i) publicly known, (ii) already known to the recipient, (iii) disclosed by a third party without restriction, (iv) independently developed, or (v) disclosed pursuant to legal requirement or order.  Following the completion of our engagement, but not before such time, we may mention the name of the Company and/or use the Company logo and provide a general description of the engagement in our printed or electronic materials, or in our marketing presentations to others.

We are not to be characterized as an "expert" for purposes of securities law and we are not to be referred to, either by name or inference, in any public (e.g., S-1) or nonpublic security filing or private placement.  (Any such disclosure document is defined herein as a "Filing".)  Moreover, we are not obligated to provide, nor will we provide, any consent to be named in any such Filing either during the performance of our services or after the conclusion of our engagement.

**5.  Use of Financial & Other Information / GAAS**  In the course of our engagement, we will use financial and other information, including prospective financial information, obtained from you, the Company, and/or your representatives, and other public and private sources.  The scope of our work will not enable us to accept responsibility for the accuracy and completeness of such information, and it is understood that we will have no duty of independent investigation or verification of such information.  While our work may involve analysis of various records, our engagement does not include an examination in accordance with generally accepted auditing standards known as "GAAS."  Furthermore, we will take no responsibility for the achievability of any expected, forecasted, projected, or hypothetical results anticipated or assumed by the management of the Company, whether relied upon by us or not.

**6.  Our Work Product and Your License**  Upon full payment of all amounts due us in connection with this engagement, the work product prepared by us for you in connection with our services will become your property, except as set forth below.  Our work papers will not constitute work product and will remain our sole and exclusive property.  We will retain sole and exclusive ownership of all right, title and interest in our proprietary information which will not constitute work product, including such information as existed prior to the delivery of our services and, to the extent such information is of general application, anything which we may discover, create or develop during our provision of services for you.  To the extent our deliverables to you contain our proprietary information, we grant you a non-exclusive, non-assignable, royalty-free license to use the proprietary information provided by us in the work product and the subject of the engagement and for no other or further use without our express, prior written consent.

**7.  Our Warranty**  We warrant that our services will be performed with reasonable care in a diligent and competent manner.  Our sole obligation will be to correct any non-conformance with this warranty, provided that you give us written notice within 60 days after the services are performed or, if applicable, deliverables are delivered.  The notice will specify and detail the non-conformance and, if you and we agree that a non-conformance exists, we will have a reasonable amount of time, based on its severity and complexity, to correct the non-conformance.

We do not warrant and are not responsible for any third party products or services.  Your sole and exclusive rights and remedies with respect to any third party products or services are against the third party vendor and not against us.

Raimy Eymard
December 19, 2019
Page 7

THIS WARRANTY IS OUR ONLY WARRANTY CONCERNING THE SERVICES AND ANY DELIVERABLE, AND IS MADE EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES AND REPRESENTATIONS, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY, NON-INFRINGEMENT, OR FITNESS FOR A PARTICULAR PURPOSE, OR OTHERWISE.

**8.  Liability and Indemnification**  (a) Reserved

 (b)       Neither of us will be liable for any delays or failures in performance due to circumstances beyond our reasonable control.

 (c)       Reserved

(d)       Any action against either of us by the other in connection with this engagement must be brought within 18 months after the cause of action arises.

**9.  Response to Subpoena**  In the event we are required to respond to a subpoena (e.g., producing documents in our possession, providing testimony, cooperating with your legal counsel, etc.) related to this engagement (regardless of whether such subpoena is served during or subsequent to the completion of our work), we will invoice you at our standard hourly rates applicable at the time such services are rendered.  We will also invoice you for our related out-of-pocket expenses, including, but not limited to, copying charges, courier fees, travel expenses and attorney fees.

**10.  Non-Solicitation**  During the term of this engagement, and for a period of one year following its expiration or termination, you will not actively solicit, employ or otherwise engage any of our employees (including former employees) who were involved directly in the engagement.

**11.  Termination**  (a) Any party may terminate our engagement at any time upon 10 days written notice.

(b)       Stout Risius Ross, LLC may suspend or terminate this engagement immediately and without notice in the event of non-payment of amounts due us.

(c)       You will pay us for all services rendered, expenses incurred or commitments made by us to the effective date of termination, and will reimburse us for all reasonable costs associated with any termination.

**12.  Our Financial Interest / Compensation** None of our employees who will work on this engagement have any

known financial interest in the Company or the outcome of our analysis, and our compensation is neither based upon nor contingent upon the conclusions we reach.  We do not warrant or predict results or final developments in this matter.

**13.  Staffing**  While we will attempt to comply with your requests for specific individuals, we retain the right to assign and reassign our personnel, as appropriate, to perform the services.

**14.  General**  (a) These Professional Terms, together with the engagement letter, including all its attachments, constitute the entire understanding and agreement between us with respect to the services and deliverables described in the engagement letter, supersede all prior oral and written communications between us, and may be amended, modified or changed only in writing when signed by all parties.  If there is a conflict between these Professional Terms and the terms of the engagement letter, these Professional Terms will govern.

(b)       No term of this agreement will be deemed waived, and no breach of this agreement excused, unless the waiver or consent is in writing signed by the party granting such waiver or consent.

(c)       The terms of this agreement which by their nature are to survive this agreement will survive its expiration or termination.

(d)       We will retain files related to this engagement in accordance with our document retention policy.

(e)       We each acknowledge that we may correspond or convey documentation via Internet e-mail and that none of the parties has control over the performance, reliability, availability, or security of Internet e-mail.  Therefore, none of the parties will be liable for any loss, damage, expense, harm or inconvenience resulting from the loss, delay, interception, corruption, or alteration of any Internet e-mail due to any reason beyond our reasonable control.

(f)       All of our respective rights and duties and all controversies and claims in connection with this engagement will be determined in accordance with the laws of the State of Texas.

*   *   *   *   *