**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

_____

In re                                                          Case No. 19-13253

**Offshore Marine Contractors, Inc.,**                  **Chapter 11**

*Debtor*                                                  **Section B**


_____

**Offshore Marine Contractors, Inc.**

*Plaintiff*
                                                                  **Adversary Proceeding 20-____**
**Versus**

**Caterpillar Financial Services Corp.**

*Defendant*


_____

**COMPLAINT FOR PRELIMINARY INJUNCTION, PERMANANENT**
**INJUNCTION, AND DECLARATORY RELIEF PURSUANT TO 11 U.S.C.**
**§§ 105 AND 362 AND FEDERAL RULE OF BANRUPTCY PROCEDURE 7065**

    **NOW INTO COURT**, through undersigned counsel, comes Offshore Marine
Contractors, Inc. ("Debtor"), as debtor and debtor-in-possession, to file this Complaint
("Complaint") for (i) Preliminary and Permanent Injunctions, restraining Caterpillar Financial
Services Corporation ("Caterpillar") from asserting certain claims against Raimy D. Eymard
("Raimy Eymard"), Louis J. Eymard, II ("Louis Eymard"), and Michael M. Eymard ("Michael
Eymard") (together, the "Guarantors") for alleged breaches of agreements and to enforce
guarantees of a loan extended prepetition by Caterpillar to Debtor (the "Caterpillar Loan") and/or
(ii) an Order declaring proceedings against Guarantors to be automatically stayed pursuant to 11
U.S.C. § 362. In support of the Complaint, the Debtor respectfully states the following:

1

## BACKGROUND

### The Debtor's Bankruptcy Proceedings

1.      On December 4, 2019 (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition for relief pursuant to Chapter 11 of Title 11 of the United States Code.

2.      The Debtor continues to operate its businesses and manage its property as debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

3.      No trustee or committee of unsecured creditors has been appointed in this matter.

### Guarantors' Roles in the Debtor

4.      Raimy Eymard is the President and Chief Financial Officer of the Debtor, whose duties entail a focus on company operations, with special knowledge of the Debtor's vessels and the operation of the same.

5.      Louis Eymard is the Chief Operations Officer for the Debtor, in charge of day to day operation and management of the Debtor's vessel fleet.

6.      Michael Eymard is a founder, former Chief Executive Officer, and presently sits on the Debtor's board of directors.

7.      Each of the Eymards are central to the successful reorganization of the Debtor, its operations, its business, and its emergence from Chapter 11.

8.      Michael Eymard, while not currently an executive officer, is a founder and built the Debtor.  Michael Eymard is intimately familiar with the market and operational issues confronting the Debtor.  Michael Eymard is a board member and, in that capacity, oversees the executives of the Debtor.

### The Debtor's Restructuring Efforts and Plans

9.     The Guarantors have, to this point, been intimately involved with the reorganization of the Debtor.

10.     The Guarantors are expected to continue to play a crucial role in the restructuring of the Debtor.  Any distraction of the Guarantors from their work would therefore be extremely damaging to the chances of a successful reorganization.

11.     Moreover, at the present time, the Debtor is working towards proposing a plan of reorganization which would benefit all creditors.  The Debtor believes that it has the support of its largest secured creditor, Bluehenge Secured Capital SBIC, LP ("Bluehenge"), for a plan which would provide for a restructuring of secured debt obligations to match the value of the underlying collateral for each, and would provide an opportunity for unsecured creditors to receive a return on their claims.  The plan under discussion at present would provide that the Guarantors potentially make new value contributions to the Debtor for it to successfully emerge from bankruptcy.

12.     The ability of the Guarantors to make such new value contributions will be severely impacted if creditors who hold guarantees "race to the courthouse" to liquidate such guarantee obligations.  In addition to the Guarantee Agreements (defined below) executed in favor of Caterpillar, the Guarantors have executed additional guarantees in favor of other creditors of the Debtor, including but not limited to Mississippi River Bank, Bluehenge, Wells Fargo Equipment Finance, Inc., Glencor, Inc., and United Community Bank.  Allowing one of these parties to rush to execute against the Guarantors has significant risk to upset the delicate balance between a successful reorganization and ultimate liquidation.

### The Caterpillar Loan and Complaint

13.     Through a Loan dated November 11, 2013, a Loan Agreement dated November 26, 2012, and First Preferred Ship Mortgage, Caterpillar loaned the Debtor approximately $10 million to acquire vessel L/B RAIMY EYMARD (the "Caterpillar Loan"). The Guarantors executed personal guarantees of the Caterpillar Loan (the "Guarantee Agreements")

14.     On February 4, 2019, Caterpillar initiated an action in the United States District Court for the Eastern District of Louisiana against the L/B RAIMY EYMARD, *in rem*, the Debtor, and the Guarantors (the "Caterpillar Action"). The complaint initiating the Caterpillar Action (the "Caterpillar Complaint") is attached hereto as **Exhibit "A."** The Caterpillar Complaint alleged material breaches of Caterpillar Loan and sought to enforce the Guarantee Agreements. *See* Caterpillar Compl. ¶¶ 16-27, 34-35. On the Petition Date, Caterpillar filed a Motion for Summary Judgment against all defendants in the Caterpillar Complaint. Subsequent to the Petition Date, Caterpillar filed a Motion to Reset and Proceed against Non-Debtor Guarantors (the "Motion to Reset") (attached hereto as **Exhibit "B"**) seeking to have the Motion for Summary Judgment reset against the Guarantors. The Motion to Reset has a submission date of January 29, 2020.

### JURISDICTION AND VENUE

15.     Pursuant to 28 U.S.C. §§ 157(b) and 1334, this Court has jurisdiction (i) to hear and determine this Complaint, and (ii) over the persons and property affected hereby. The subject matter of this Complaint is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (G).

16.     The venue of this proceeding and this Complaint is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

17.     The relief sought with this Complaint is based upon §§ 362 and 105 of the Bankruptcy Code.

## THE PARTIES

18.     The Plaintiff is the Debtor, who filed a voluntary petition for chapter 11 bankruptcy relief on December 4, 2019.  The last four digits of the taxpayer identification number for the Debtor are 6077.  The Debtor may be reached through undersigned counsel.

19.     Upon information and belief, Defendant Caterpillar is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Tennessee, doing business in the State of Louisiana, and may be served through its registered agent, CT Corporation System, 3867 Plaza Tower Dr., Baton Rouge, LA 70816.

## CAUSES OF ACTION

## COUNT ONE: PRELIMINARY INJUNCTION

20.     Plaintiff incorporates all prior paragraphs into this section to the extent not inconsistent, as if fully set forth herein.

21.     Debtor respectfully requests that this Court use the powers granted to it under 11 U.S.C. § 105(a) to issue a Preliminary Injunction to enjoin Caterpillar from proceeding with its claims against the Guarantors for breach of the Guarantee Agreements until a hearing for a permanent injunction is held before this Court, as these claims will irreparably harm the Debtor's ability to reorganize.

## I.     An Injunction Granted under Section 105 Requires Unusual Circumstances and the Classic Prerequisites for Injunctive Relief

22.     Should this Court find that the stay does not automatically apply to actions against Guarantors pursuant to § 362, as alleged in Count Three, this Court should still choose to stay the Caterpillar Action in order to protect the Estate, which requires a showing of "unusual

5

circumstances" and that the prerequisites for injunctive relief are met.

### A.    "Unusual Circumstances" Exist in this Case to Justify an Injunction

23.    "Unusual circumstances" necessary for injunctive relief under 11 U.S.C. § 105 are present here.  Circumstances qualify as "unusual" "1) when the nondebtor and the debtor enjoy such an identity of interests that the suit against the nondebtor is essentially a suit against the debtor, and 2) when the third-party action will have an adverse impact on the debtor's ability to accomplish reorganization." *Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 761 (5th Cir. 1995).  "When either of these circumstances occur, an injunction may be warranted."  *Id.*

24.    Here, sufficient "identity of interests" exists between the Guarantors and the Debtor such that if Caterpillar is permitted to continue to pursue the Caterpillar Action against the Guarantors it will be essentially pursuing those claims against the Debtor and the assets of the Debtor's estate.   And as to the second circumstance, Debtor asserts that, if allowed to proceed, the Caterpillar Action will have a significant adverse impact on the Debtor's ability to reorganize.  *See, e.g.*, *SAS Overseas Consultants v. Benoit*, No. CIV.A. 99-1663, 2000 WL 140611, at *3 (E.D. La. Feb. 7, 2000) (citing *In re Venzke Steel Corp.*, 142 B.R. 183, 183 (Bankr. N.D. Ohio 1992)).  Therefore, "unusual circumstances" as to each of the Guarantors sufficient to satisfy the first requirement of the entry of a preliminary injunction under 11 U.S.C. § 105 are present.

### B.    The Prerequisites for a Preliminary Injunction are Met

25.    The second half of the test to stay the Caterpillar Action as to the Guarantors, which requires the movants to demonstrate that the classic requirements for a preliminary injunction are met, is satisfied here. The prerequisites for a preliminary injunction are:

(a) a substantial likelihood that the movant will prevail on the merits; (b) a substantial threat that the movant will suffer irreparable injury if the injunction is not granted; (c) that the threatened injury to the movant outweighs the threatened harm an injunction may cause the party opposing the injunction; and (d) that the granting of the injunction will not disserve the public interest.

*Lentz v. Cahaba Disaster Relief, LLC (In re CDP Corp., Inc.)*, 462 B.R. 615, 629 (Bankr. S.D. Miss. 2011).

*1.    The Guarantors can demonstrate a likelihood of success on the merits*

26.    "Bankruptcy courts have defined success on the merits as 'the probability of a successful plan or reorganization.'" *In re The Babcock & Wilcox Co.*, No. 00-1051, 2001 WL 536305, at *7 (E.D. La. May 18, 2001) (quoting *In re Otero Mills, Inc.*, 21 B.R. 777, 779 (Bankr. D.N.M.)).

27.    A substantial likelihood exists that the Debtor will be able to reorganize successfully, assuming the Caterpillar Action against the Guarantors is stayed.  Although the Debtor cannot now predict a positive outcome in reorganization with absolute certainty, that does not mean that the Guarantors cannot show success on the merits.  *See Nelson v. Gen. Elec. Capital Corp. (In re Steven P. Nelson, D.C., P.A.)*, 140 B.R. 814, 816 (Bankr. M.D. Fla. 1992) ("This Chapter 11 case is still in an embryonic stage and it is clearly unreasonable to require the Debtor at this early stage of the case to make detailed projections of the terms or anticipated feasibility of its plan of reorganization.").  Successful reorganization in this case appears likely, but it will be much less likely if the Guarantors are distracted in defending a $6-7 million claim as a result of the adjudication of the Caterpillar Action at this time.  Therefore, the first prerequisite justifying preliminary injunctive relief is met.

### 2. The Guarantors can demonstrate irreparable harm

28.     The same circumstances that indicate that the reorganization will be adversely impacted will often also prove irreparable harm. *See id*. Courts have consistently found irreparable harm where a key officer in the debtor organization would be distracted by defending a claim brought forth by a creditor. *See SAS Overseas Consultants v. Benoit*, No. CIV A 99-1663, 2000 WL 140611, at *4 (E.D. La. Feb. 7, 2000).

29.     The Debtor depends on the Guarantors for oversight of the businesses in general, and of their various components in particular.  If the Guarantors are not allowed to devote 100% of their time to the reorganization process during this critical juncture, reorganization will be irreparably harmed as successful reorganization may not be possible, thus demonstrating the requisite showing of irreparable harm.  In the absence of a stay or injunction of the Caterpillar Action, the Guarantors' energies and resources that will be expended in defending the Caterpillar Action and will be expended to the detriment of both the Debtor and its creditors.  *See In re Venzke Steel Corp.*, 142 B.R. 183, 185 (Bankr. N.D. Ohio 1992).

### (3) The threatened injury to the Debtor and its creditors outweighs the threatened harm an injunction may cause Caterpillar

30.     The Debtor will be irreparably harmed if the Caterpillar Action is not enjoined against the Guarantors, but no reason exists to suspect that Caterpillar will suffer harm at all. Caterpillar has security in a significant asset of the Debtor.  Furthermore, the relief sought by Debtor will merely delay the Caterpillar Action against the Guarantors; it will not bar Caterpillar from bringing its claims after reorganization.  *See SAS Overseas Consultants*, No. CIV.A. 99-1663, 2000 WL 140611, at *5.

*(4)     Granting the injunction will not disserve the public interest*

31.     Finally, as demonstrated above, harm to Caterpillar is non-existent or negligible, while "the issuance of an injunction will serve the public interest as promoting the reorganization of a potentially viable company." *In re Venzke Steel Corp.*, 142 B.R. at 185. All creditors, including Caterpillar, of course benefit from a successful reorganization.

32.     Given that the prerequisites for an injunction are met and that there are "unusual circumstances," an injunction should issue enjoining the Caterpillar Action against the Guarantors until reorganization can be accomplished.

## COUNT TWO: PERMANENT INJUNCTION

33.     Plaintiff incorporates all prior paragraphs into this section to the extent not inconsistent, as if fully set forth herein.

34.     Debtor respectfully requests that this Court issue a permanent injunction enjoining the Caterpillar Action from proceeding against the Guarantors during the pendency of Debtor's Chapter 11 bankruptcy proceedings. Such an injunction, conditioned on the pendency of the bankruptcy, does not conflict with § 524 of the Bankruptcy Code (which prohibits the discharge of the debts of non-debtors) because it does not deny Caterpillar its claims against the Guarantors, but merely imposes a delay. *Cf. Matter of Zale Corp.*, 62 F.3d 746, 760 (5th Cir. 1995). By tying the injunction to Chapter 11 proceedings, the injunction will have a definite end date, and will therefore not constitute a discharge, but will give protection to the Debtor only for the period it is needed.

## COUNT THREE: DECLARATORY ORDER

35.     Plaintiff incorporates all prior paragraphs into this section to the extent not inconsistent, as if fully set forth herein.

36.     As an alternative to the relief requested in Count Two, the Debtor requests that this Court issue a declaratory order pursuant to § 105 of the Bankruptcy Code, finding that the automatic stay imposed by 11 U.S.C. § 362 applies to the Guarantors because the Guarantors' identities of interests with the Debtor are such that Caterpillar is essentially pursuing claims against the Debtor if the matter is not stayed.

37.     Although the automatic stay of proceedings pursuant to § 362(a)(1) "is generally said to be available only to the debtor, not third party defendants or co-defendants," courts have observed that "'there are cases [under § 362(a)(1)] where a bankruptcy court may properly stay the proceedings against non-bankrupt co-defendants.'" *A.H. Robins Co. v. Piccinin*, 788 F. 2d 994, 999 (4th Cir. 1986). Specifically, "a bankruptcy court may invoke § 362 to stay proceedings against non-bankrupt co-defendants where 'there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.'" *Reliant Energy Servs., Inc. v. Enron Canada Corp.*, 349 F. 3d 816, 825 (5th Cir. 2003) (quoting *A.H. Robins Co*, 788 F. 2d at 999).

38.     In this case, the Guarantors are intertwined with the Debtor such that it is necessary to issue a stay to delay proceedings against the Guarantors, not only for the sake of the Guarantors and the Debtor, but also all creditors in this case. *See In re Eagle-Picher Indus., Inc.*, 963 F.2d 855, 857-61 (6th Cir. 1992). The Guarantors, as key officers and directors of the Debtor, are critical to reorganization and allowing the claims against the Guarantors would be to the great detriment of the reorganization and the creditors. *See SAS Overseas Consultants*, No. CIV.A. 99-1663, 2000 WL 140611, at *3. Thus, this Court should issue an Order extending the automatic stay to pursuant to its § 105 equitable powers. *See id.*

## PRAYER FOR RELIEF

**WHEREFORE**, the Debtor respectfully requests that this Court (i) following notice and hearing, enter Preliminary and Permanent Injunctions, enjoining the Caterpillar Action from proceeding against the Guarantors during the pendency of the Debtor's bankruptcy proceedings; or (ii) alternatively, issue an Order extending the automatic stay imposed by § 362 of the Bankruptcy Code to the non-debtor Guarantors.

Respectfully Submitted,

**STEWART ROBBINS BROWN & ALTAZAN, LLC**
301 Main Street, Suite 1640
P. O. Box 2348
Baton Rouge, LA  70821-2348
(225) 231-9998 Telephone
(225) 709-9467 Fax

By:    /s/ *P. Douglas Stewart, Jr.*
Paul Douglas Stewart, Jr. (La. #24661)(T.A.)
dstewart@stewartrobbins.com
Brandon A. Brown (La. #25592)
bbrown@stewartrobbins.com
Garrett A. Anderson (La. #38657)
ganderson@stewartrobbins.com

***Proposed Counsel for Offshore Marine Contractors, Inc.***

**Please Serve:**

Caterpillar Financial Services Corporation
CT Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816

11

# EXHIBIT A
# THE CATERPILLAR COMPLAINT

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| CATERPILLAR FINANCIAL<br>SERVICES CORPORATION, | * | CIVIL ACTION NO. 2:19-cv-00855 |
| | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **VERSUS** | * | SECTION |
| | * | |
| THE L/B RAIMY EYMARD, ALONG WITH | * | JUDGE |
| HER ENGINES, BOILERS, APPAREL, ETC., <u>IN</u> | * | |
| <u>REM</u>, OFFSHORE MARINE CONTRACTORS, | * | |
| INC., LOUIS J. EYMARD II, RAIMY D. | * | |
| EYMARD and MICHAEL M. EYMARD | * | |
| | * | |
| **Defendant.** | * | MAGISTRATE |
| | * | |

**********************************************

**VERIFIED COMPLAINT IN REM AND IN PERSONAM**
**TO ENFORCE PERMANENT LOAN NOTE,**
**LOAN AGREEMENT, AND FIRST PREFERRED SHIP MORTGAGE**

NOW INTO COURT, through undersigned counsel, comes Plaintiff, Caterpillar

Financial Services Corporation, and for its Verified Complaint respectfully represents as follows:

**THE PARTIES**

1.

Plaintiff, Caterpillar Financial Services Corporation ("Caterpillar"), is a Delaware

corporation having its principal place of business in Tennessee, and is doing business in the State

of Louisiana.

2.

 Made defendant herein is the documented United States vessel L/B RAIMY EYMARD, bearing Official No. 1249839 (the "Vessel").   The Vessel is afloat within the Eastern District of Louisiana and is within the jurisdiction of this Court.

3.

 Made defendant herein is Offshore Marine Contractors, Inc. (the "Owner"), a Louisiana corporation having its principal place of business at 133 W. 113th Street, Cut Off, Louisiana 70345.   Owner is the successor in interest to Glencoe, Inc., the original mortgagor of the Vessel, pursuant to the Articles of Merger dated April 28, 2015. (Exhibit "1")   Owner is the owner of the Vessel.

4.

 Made defendant herein is Louis J. Eymard II, a Louisiana citizen, residing in Cut Off, Louisiana .

5.

 Made defendant herein is Raimy D. Eymard, a Louisiana citizen, residing in Cut Off, Louisiana.

6.

 Made defendant herein is Michael M. Eymard, a Louisiana citizen, residing in Cut Off, Louisiana.   Louis J. Eymard II, Raimy D. Eymard, and Michael M. Eymard are collectively referred to herein as the "Guarantors".

2218967.1

7.

This is an action against the Vessel, and its engines, boilers, tackle, apparel, etc., *in rem*, to recognize the first preferred ship mortgage and first ranking maritime lien over the Vessel in favor of Caterpillar under 46 U.S.C. § 31322, and an action *in personam* against the Owner and the Guarantors under 46 U.S.C. § 31325(b)1 and 31325(b)2 for payment of sums due under a loan extended by Caterpillar

## JURISDICTION AND VENUE

8.

Subject matter jurisdiction is proper in this case because Caterpillar is seeking to enforce its promissory note, loan agreement and first ranking preferred ship mortgage against the Vessel, the Owner, and the Guarantors.  Therefore, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1333 in that this action is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and the Supplemental Rules For Certain Admiralty and Maritime Claims.  Additionally, subject matter jurisdiction is also proper for the claims asserted by Caterpillar against Owner and the Guarantors under 28 U.S.C. § 1332 because there is complete diversity between the parties and this matter involves an amount in controversy in excess of $75,000.

9.

Venue is proper in this district under 28 U.S.C. §1391 because the Vessel is located within this district.  Additionally, the Owner and each of the Guarantors reside within this district.

2218967.1

3

## FACTUAL ALLEGATIONS

### THE LOAN

10.

Caterpillar is the owner and holder of the Permanent Loan Note dated November 11, 2013 in the principal amount of $10,332,000.00 (the "Loan"), made payable by Owner to the order of Caterpillar, with principal, interest, attorneys' fees and costs as set forth more fully therein.   Under the Permanent Loan Note, Owner is obligated to repay the Loan in monthly installments of principal and interest and became due in full on March 1, 2018.  A true and correct copy of the Permanent Loan Note is attached hereto as Exhibit "2" and is incorporated herein by this reference.

11.

Owner also entered into a Loan Agreement with Caterpillar on November 26, 2012, which was Amended in conjunction with the Permanent Loan Note on or about November 11, 2013 (collectively, the "Loan Agreement").  A copy of the Loan Agreement and all amendments thereto are attached as Exhibit "3" *in globo* and incorporated herein by this reference.

12.

To secure the payment of all sums due under the Permanent Loan Note and Loan Agreement, Owner, as mortgagor, duly executed and delivered to Caterpillar, as mortgagee, a first preferred ship mortgage dated November 11, 2013 on the Vessel (the "Preferred Ship Mortgage"), her engines, boilers, tackle, apparel, *etc.*, securing the sum of $10,332,000, all as

2218967.1

4

more fully described therein. A copy of the Preferred Ship Mortgage is attached hereto as Exhibit "4" and incorporated herein by this reference.

13.

The Preferred Ship Mortgage was received for recordation by the U.S. Coast Guard at the National Vessel Document Center on or about November 13, 2013, and recorded in Batch Number 15676400, Document ID Number 2. Recordation of the Preferred Ship Mortgage is evidenced in the Abstract of Title dated January 29, 2019, attached hereto as Exhibit "5".

14.

At the time the Preferred Ship Mortgage was executed, the Vessel was, and still remains, duly licensed and enrolled under the laws of the United States, having its home port in New Orleans, Louisiana.

15.

All of the acts and things required to be done by 46 U.S.C. § 31322 in order to give the Preferred Ship Mortgage the status of a first preferred ship mortgage, were done or caused to be done, by Caterpillar or by the U.S. Coast Guard.

**OWNER'S DEFAULT OF ITS PAYMENT OBLIGATIONS UNDER THE LOAN**

16.

Owner was obligated to repay the Loan in full to Caterpillar on March 1, 2018. Owner has failed to repay the Loan in full, and therefore, is in default of the Permanent Loan Note and Loan Agreement. The balance due on the Permanent Loan Note and Loan Agreement as of January 23, 2019 is $6,588,923.73, plus interest, attorneys' fees and costs.

2218967.1

5

17.

Section 7.01(a) of the Loan Agreement defines an "Event of Default," as default by the Owner "in the payment of any principal or interest hereunder, or on any Note or any other Obligation when it becomes due hereunder or under any Note or any other Loan Documents (whether at maturity, by reason of notice of prepayment or acceleration or otherwise)". (Exhibit "3," Section 7.01).

18.

The Loan Agreement further provides that in the event that any installment on the Permanent Loan Note is not paid when due, Caterpillar "shall further have the right, at its sole option, to accelerate the maturity and insist upon immediate payment in full of the unpaid principal balance and all accrued interest then outstanding under the Loan (including additional interest accrued on past due payments and any prepayment premium, as provided herein), together with Lender's legal fees, costs, expenses and other fees and charges, as provided herein." (Exhibit "3," Section 7.03).

19.

Because Owner has failed to repay the Loan in full on March 1, 2018, Caterpillar has declared and does hereby further declare Owner to be in default of its payment obligations under the Permanent Loan Note, Loan Agreement, and Preferred Ship Mortgage.

20.

The balance due on the Permanent Loan Note and Loan Agreement as of January 23, 2019 is $6,588,923.73, plus interest, attorneys' fees and costs.

2218967.1

21.

Pursuant to the Preferred Ship Mortgage, any "Event of Default" under the Loan Agreement shall constitute an "Event of Default" under the Preferred Ship Mortgage. (Exhibit "4", Article 9).

22.

When the Owner is in default under the Preferred Ship Mortgage, Caterpillar is authorized to "exercise all of the rights and remedies in foreclosure or public or private sale and otherwise given to mortgagees or secured parties by laws of the United States of America or other applicable provisions of law, including but not limited to, the Ship Mortgage Act of 1990 (46 U.S.. 30101 et seq.) and the law (including the Uniform Commercial Code) of any jurisdiction in which the Vessel may be found; to bring suit at law, in equity or admiralty, at its discretion, to recover judgment for the Obligations, *in rem* or *in personam*, and seek collection and satisfaction of same." (Exhibit "4", Article 9).

23.

Because Owner is in default under the Permanent Loan Note, Loan Agreement and Preferred Ship Mortgage, Caterpillar seeks to have a judgment rendered against the Owner for all sums due under the Loan, have the Vessel seized and sold at a judicial sale to be conducted by the United States Marshal, and have the proceeds of such sale distributed to Caterpillar.

2218967.1

## GUARANTORS' LIABILITY FOR PAYMENT OF THE LOAN

24.

As further inducement for Caterpillar to provide the Loan to Owner, Louis J. Eymard II executed a personal guaranty in favor of Caterpillar in which he "absolutely and unconditionally agreed to, and by these presents does hereby, guarantee the prompt and punctual payment, performance and satisfaction of all present and future indebtedness of [Owner] to [Caterpillar], including without limitation, Borrower's loan agreement with Lender of even date herewith …" A copy of Louis J. Eymard II's Guaranty is attached as Exhibit "6".

25.

As further inducement for Caterpillar to provide the Loan to Owner, Raimy D. Eymard executed a personal guaranty in favor of Caterpillar in which he "absolutely and unconditionally agreed to, and by these presents does hereby, guarantee the prompt and punctual payment, performance and satisfaction of all present and future indebtedness of [Owner] to [Caterpillar], including without limitation, Borrower's loan agreement with Lender of even date herewith …" A copy of Raimy D. Eymard's Guaranty is attached as Exhibit "7".

26.

As further inducement for Caterpillar to provide the Loan to Owner, Michael M. Eymard executed a personal guaranty in favor of Caterpillar in which he "absolutely and unconditionally agreed to, and by these presents does hereby, guarantee the prompt and punctual payment, performance and satisfaction of all present and future indebtedness of [Owner] to [Caterpillar],

including without limitation, Borrower's loan agreement with Lender of even date herewith ..."
A copy of Michael M. Eymard's Guaranty is attached as Exhibit "8".

27.

Because the Guarantors guaranteed the Owner's payment obligations to Caterpillar, the Guarantors are liable on a joint and several, and solidary basis with Owner for payment of all amounts due under the Loan.

**COUNT I:**
**ENFORCEMENT OF PREFERRED MORTGAGE AND RECOGNITION OF LIEN**
**AGAINST THE VESSEL**

28.

Caterpillar realleges each of the allegations of paragraphs 1 through 27 above, as if set forth in full herein.

29.

Caterpillar is the holder and owner of the Permanent Loan Note, Loan Agreement, and the Preferred Ship Mortgage, and has the right in its own name to enforce and collect the obligations evidenced by the Permanent Loan Note and Loan Agreement from the Owner and to enforce the Preferred Ship Mortgage over the Vessel.

30.

Because Owner defaulted under the Permanent Loan Note, Loan Agreement, and the Preferred Ship Mortgage as specified above, Caterpillar requests that: (i) the Vessel be seized; (ii) Caterpillar's lien and encumbrance of the Preferred Ship Mortgage be recognized and enforced as a valid first preferred ship mortgage against the Vessel; (iii) the Court order the

2218967.1

Vessel to be sold at a judicial sale conducted by the United States Marshal; (iv) the proceeds of such sale be distributed to Caterpillar; and (v) the Court order such other legal and equitable relief as is just and due under admiralty and maritime jurisdiction.

31.

Pursuant to the United States Code and the local rules of this Court, notice of these proceedings must be given to the owner or master of the Vessel and all persons who have recorded lien(s) with the U.S. Coast Guard. Caterpillar requests that the Court order such notification to be made to such persons by certified mail, delivered to their last known address on file with the United States Coast Guard.

**COUNT II:**
**ENFORCEMENT OF CLAIM FOR THE OUTSTANDING INDEBTEDNESS DUE**
**UNDER THE LOAN AGAINST THE OWNER**

32.

Caterpillar realleges each of the allegations of paragraphs 1 through 31 above, as if set forth in full herein.

33.

Because Owner is in default of its payment obligations under the Loan, Owner is liable *in personam* to Caterpillar for the balance due on the Permanent Loan Note and Loan Agreement, plus interest, attorneys' fees and costs. As of January 23, 2019, the past due balance owed by Owner is $6,588,923.73, plus interest, attorneys' fees and costs. Caterpillar seeks judgment against the Owner for these amounts.

2218967.1

10

**COUNT III:**
**ENFORCEMENT OF CLAIM FOR THE OUTSTANDING INDEBTEDNESS DUE**
**UNDER THE LOAN AGAINST THE GUARANTORS**

34.

Caterpillar realleges each of the allegations of paragraphs 1 through 33 above, as if set forth in full herein.

35.

Because Guarantors guaranteed Owner's payment obligations under the Loan, Guarantors are liable with Owner on a joint and several, and solidary basis to Caterpillar for the balance due on the Permanent Loan Note and Loan Agreement, plus interest, attorneys' fees and costs. Caterpillar seeks judgment against the Guarantors for the sum of $6,588,923.73, plus interest, attorneys' fees and costs.

**VERIFICATION**

36.

An Affidavit by Caterpillar's authorized representative verifying the facts of the Complaint is attached as Exhibit "9."

37.

Pursuant to local rule, Caterpillar agrees to release, hold harmless and indemnify the United States of America, the United States Marshal, their agents, servants, employees, and all others for whom they are responsible, from any and all liability or responsibility for claims arising from the arrest, attachment, and movement of the Vessel.

**WHEREFORE**, plaintiff, Caterpillar Financial Services Corporation, prays:

2218967.1

1.      That process *in rem* pursuant to Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure issue against the L/B RAIMY EYMARD, bearing Official No. 1249839, and its engines, tackle and apparel, etc., and that all persons having or claiming any interest therein be cited to appear in and answer, under oath, all and singular the matters aforesaid, that the Preferred Ship Mortgage in favor of Caterpillar Financial Services Corporation, be declared to be a valid and subsisting first ranking lien upon the Vessel, its engines, tackle, apparel, etc., *in rem*, and that the L/B RAIMY EYMARD be seized and sold to satisfy all amounts owed to Caterpillar, as set forth herein;

2.      For judgment *in rem* against the L/B RAIMY EYMARD, as provided by 46 U.S.C. §31326, in the full amount due as set forth herein, including prejudgment interest, costs, expenses and attorneys' fees, and judgment *in personam* against Offshore Marine Contractors, Inc., Mr. Louis J. Eymard II, Mr. Raimy D. Eymard, and Mr. Michael M. Eymard holding them jointly and severally liable to Caterpillar Financial Services Corporation for the sum of $6,588,923.73, plus interest, attorneys' fees and costs;

3.      That any property attached in this proceeding be sold under the direction of this Court, and that the proceeds of the sale be deposited with the Court to satisfy all amounts owed to Caterpillar Financial Services Corporation;

4.      That notice of these proceedings be given to the owner or master of the L/B RAIMY EYMARD and all persons who have recorded lien(s) with the U.S. Coast Guard by certified mail, delivered to their last known address on file with the United States Coast Guard National Vessel Documentation Center; and

2218967.1

5.      That this Court grant Caterpillar Financial Services Corporation such other and further relief which it may deem just and proper.

Respectfully submitted, this 4th day of February, 2019.

Respectfully submitted,

**McGlinchey Stafford PLLC**

/s/Adam C. McNeil
ADAM C. McNEIL (#27001)
601 Poydras Street, 12th Floor
New Orleans, Louisiana 70130
Telephone:  (504) 586-1200
Facsimile:   (504) 596-2800
amcneil@mcglinchey.com
**Attorneys for Plaintiff,**
**Caterpillar Financial Services Corporation**

**INFORMATION FOR SERVICE:**

**Please arrest the M/V RAIMY EYMARD and its engines, tackles, equipment and furnishings, etc.**

**(please contact Steve Kokinos with Ocean Marine Brokerage, 1479 Coteau Road, Houma, Louisiana 70349 to be appointed substitute custodian, to coordinate timing and location of arrest.  Tel.: (985) 448-0409, Cell: (985) 637-0727).**

2218967.1

13

**EXHIBIT B**
**MOTION TO RESET**

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **CATERPILLAR FINANCIAL** | * | **CIVIL ACTION NO. 2:19-cv-00855** |
| **SERVICES CORPORATION,** | * | |
| | * | |
| **Plaintiff,** | * | **CHIEF JUDGE NANNETTE** |
| | * | **JOLIVETTE BROWN** |
| **VERSUS** | * | |
| | * | |
| **THE L/B RAIMY EYMARD, ALONG WITH** | * | **MAGISTRATE JUDGE** |
| **HER ENGINES, BOILERS, APPAREL, ETC.,** | * | **KAREN WELLS ROBY** |
| ***IN REM*; OFFSHORE MARINE** | | |
| **CONTRACTORS, INC., LOUIS J. EYMARD** | * | |
| **II, RAIMY D. EYMARD AND MICHAEL M.** | * | |
| **EYMARD, *IN PERSONAM*** | * | |
| **Defendant.** | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* \*

### MOTION TO RESET AND PROCEED WITH PENDING MOTIONS AGAINST NON-DEBTOR GUARANTORS

**NOW INTO COURT,** through undersigned counsel, comes Plaintiff Caterpillar

Financial Services Corporation ("Caterpillar"), and in light of *in personam* defendant Offshore

Marine Contractors, Inc.'s ("OMC" or "Debtor") filing of a voluntary petition in the United

States Bankruptcy Court for the Eastern District of Louisiana for relief under Chapter 11 of Title

11 of the United States Code (the "Bankruptcy Code") (*see* Rec. 37) ("OMC Bankruptcy"), and

*In Re Offshore Marine Contractors, Inc.*, Case No. 19-13253 (Bankr. E.D. La.)) and this Court's

prior Order (Rec. 39) continuing the submission date of pending motions in this matter,

respectfully moves this Court for entry of an Order resetting Caterpillar's Motion for Summary

Judgment ("MSJ," Rec. 35) and Motion to Strike the Answer and Affirmative Defenses

("Motion to Strike," Rec. 34) for submission as against the non-Debtor Guarantor Defendants

Louis J. Eymard, II, Raimy D. Eymard, and Michael M. Eymard ("Guarantors") because the

CMH01 4811-2394-4112
2830546-000646

automatic stay provisions of the Bankruptcy Code (11 U.S.C. §362) do not apply to the non-Debtor Guarantors.

In particular, this Court's December 19, 2019 Order (Rec. 39) continued the submission dates on Caterpillar's MSJ and Motion to Strike "until the scope of the automatic stay occasioned by [the OMC Bankruptcy] can be resolved and/or a Motion to Sever filed, or until such other relief as to the nondebtor entities is requested from and granted by the Court." Caterpillar submits the instant Motion to reset the MSJ and Motion to Strike as a "request [for] other relief as to the nondebtor entities[/Guarantors" and because the "scope of the automatic stay" does not extend to Guarantors," all as set forth more fully in the accompanying Memorandum in Support.

**WHEREFORE,** Caterpillar requests that the Court grant the instant Motion, and issue an Order resetting the MSJ and Motion to Strike as against Guarantors for submission on the Court's next available submission date (January 29, 2020).

Respectfully submitted,

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**

BY:   */s/ Christopher M. Hannan*
**CHRISTOPHER M. HANNAN (#31765)
BENJAMIN W. JANKE (#31796)
KRISTEN L. HAYES (#36490)**
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Telephone:  (504) 566-5200
Facsimile:  (504) 636-4000
E-mail: channan@bakerdonelson.com
E-mail: bjanke@bakerdonelson.com
E-mail: klhayes@bakerdonelson.com
**ATTORNEYS FOR PLAINTIFF,
CATERPILLAR FINANCIAL SERVICES
CORPORATION**

2