IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re | ) | Case No. 19-13253 |
| | ) | |
| Offshore Marine Contractors, Inc., | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Section B |
| | ) | |

**MOTION FOR AUTHORIZATION TO OBTAIN POSTPETITION
UNSECURED CREDIT AND INCUR POSTPETITION UNSECURED DEBT
IN THE ORDINARY COURSE OF BUSINESS**

**A HEARING WILL BE CONDUCTED ON THIS MATTER ON FEBRUARY 5, 2020 AT 9:00 A.M. IN COURTROOM B-705, 500 POYDRAS ST., NEW ORLEANS, LOUISIANA 70130. IF YOU OBJECT TO THE RELIEF REQUESTED IN THIS PLEADING, YOU MUST RESPOND IN WRITING. UNLESS DIRECTED OTHERWISE BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT NO LATER THAN SEVEN (7) DAYS BEFORE THE HEARING DATE. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**NOW INTO COURT**, through undersigned counsel, comes Offshore Marine Contractors, Inc. (the "Debtor"), as debtor in possession in the above-captioned matter, who moves this Court, pursuant to 11 U.S.C. §§ 363(c)(1), 364(a), and 105(a) for (i) authorization to, in the ordinary course of business, obtain unsecured credit from and incur post-petition unsecured debt with American Express Company and its affiliated entities and subsidiaries (collectively, "Amex"); (ii) authorization to pay prepetition balances owed to Amex; (iii) authorization to waive any potential causes of action arising under chapter 5 of the Bankruptcy Code as to transfers made to Amex; (iv) a waiver of the requirements of Federal Rule of Bankruptcy Procedure 6004(h); and (v) such other relief deemed just and appropriate. In support of this Motion, the Debtor represents as follows:

**Jurisdiction and Venue**

1. This Court has jurisdiction to consider the subject matter of this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a "core" proceeding within the meaning of 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief requested herein includes 11 U.S.C. §§ 105, 363, and 364.

### Background

2. The Debtor commenced this case on December 4, 2019 by filing a voluntary petition for relief under chapter 11, Title 11 United States Code. [P-1]. The Debtor continues to operate its business and manage its properties as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108. No trustee or examiner has been requested or appointed, and no official committee of creditors or equity interest holders has been established.

3. The Debtor is primarily engaged in the business of providing offshore, self-propelled, self-elevating liftboats for the offshore energy exploration, construction, and transportation industries.

4. The Debtor, in the ordinary course of business, buys fuel, galley, and other supplies and parts necessary for the continued operation of its fleet. To do so, the Debtor utilizes multiple corporate credit cards under a single corporate account. The Debtor's corporate credit cards allow the Debtor to make necessary purchases by incurring unsecured debt on a revolving line of credit with Amex under account number 3782-997120-31006 (the "<u>Amex Account</u>"). Additionally, the Debtor's use of its Amex Account provides it with the ability to purchase necessary supplies and equipment on the weekends when it otherwise would be unable to do so, as well as when the Debtor does not have credit terms established with certain vendors. The Debtor's post-petition Amex Account credit limit shall be fixed at $25,000 on a revolving basis.

5. Prior to the Petition Date, the Debtor typically paid down its balance under the Amex Account on a monthly basis. Depending, however, on the Debtor's cash flow, the Debtor would sometimes pay down the Amex Account balance more frequently.

6. Within ninety (90) days prior to the Petition Date, the Debtor made transfers to Amex to satisfy its obligations under the Amex Account in the ordinary course of business, and Amex provided continuous and subsequent new value to the Debtor. These transfers are reflected in the Debtor's Statement of Financial Affairs [P-79].[1]

7. As of the date of the filing of this motion, the balance due in connection with the Amex Account is $4,322.78. Of this balance, $2,733.38 represents prepetition charges.[2] Further, shortly after the Debtor filed its petition for relief and pursuant to Amex's contractual rights and remedies, Amex prevented the Debtor's ability to incur further debt with its corporate credit cards and conditioned further utilization of the Amex Account on the Debtor's satisfaction of its account balance, as well as a waiver of any potential causes of actions potentially arising with respect to the Amex Account under chapter 5 of the Bankruptcy Code—both of which are reasonable, standard, and satisfactory terms for the Debtor and its estate.

**Relief Requested**

A. Obtaining post-petition unsecured credit and incurring post-petition unsecured debt.

8. The Debtor requests authorization pursuant to 11 U.S.C. §§ 364(a) and 363(c)(1) to obtain unsecured credit and incur unsecured debt in the ordinary course of business as an allowed administrative expense under 11 U.S.C. § 503(b) through its continued post-petition use of corporate credit cards and the Amex Account.

---

[1] The transfers reflected in the Statement of Financial Affairs are summarized in a table attached hereto as **Exhibit "A."**

[2] Of the total Amex Account balance, $1,589.40 represents charges made postpetition and prior to Amex's prevention of the Debtor's use of the Amex Account.

B. Prepetition Amex Account balance roll-up.

9. While the continued credit requested by the Debtor is customarily occasioned by the Debtor's ordinary course of business, and thus approval general would be unnecessary, Amex understandably requires payment of the outstanding Amex Account balance as a condition of further lending. Indeed, the balance is rather small when compared to the Debtor's other financial obligations and spending demands. Therefore, the Debtor requests that the Court authorize payment of the outstanding balance in connection with its Amex Account pursuant to 11 U.S.C. §§ 363(c)(1) and 105(a) in the ordinary course of business. Specifically, the Debtor requests that the Court authorize payment of the Amex Account prepetition balance in the amount of $2,733.38.[3]

C. Waiver of causes of action under chapter 5 of the Bankruptcy Code.

10. To the extent that chapter 5 of the Bankruptcy Code does not itself preclude the Debtor's avoidance of any and all transfers made to Amex, including all payments both prepetition and post-petition (the "Amex Transfers"), the Debtor requests that the Court approve the Debtor's waiver of the right to prosecute, and deem the Debtor to have settled, any potential causes of action arising under chapter 5 of the Bankruptcy Code ("Chapter 5 Causes of Action") solely as they relate to the Amex Transfers. In addition to the "ordinary" nature of the Amex Transfers and the subsequent new value that Amex continuously provided to the Debtor—thus rendering the Chapter 5 Causes of Action essentially defendable by Amex—the Debtor's request is consistent with relief granted in critical-vendor contexts, assumed contracts, and other post-petition-financing terms.

D. Waiver of Rule 6004(h) stay of relief.

---

[3] The amount of unsecured debt incurred post-petition, $1,589.40, reflects the Debtor's exercise of its powers under 11 U.S.C. § 364(a) to obtain postpetition unsecured credit and incur postpetition unsecured debt in the ordinary course of business. *See* ¶¶ 18-25. Therefore, no approval is necessary for the Debtor's payment of the postpetition balance as an allowed administrative expense under 11 U.S.C. § 503(b). *See* 11 U.S.C. §§ 364(a), 503(b), 363(c).

11. The Debtor requests a waiver of any stay of any order granting the relief requested herein pursuant to Federal Rule of Bankruptcy Procedure 6004(h).

## Basis for Relief Requested

### A. Obtaining post-petition unsecured credit and incurring post-petition unsecured debt.

12. Sections 364(a) and 363(c)(1) of the Bankruptcy Code both support the Debtor's request for authorization to obtain post-petition unsecured credit and incur post-petition unsecured debt. Section 364(a) of the Bankruptcy Code provides that a debtor in possession "may obtain unsecured credit and incur unsecured debt in the ordinary course of business allowable under section 503(b)(1) of this title as an administrative expense." 11 U.S.C. § 364(a). Section 363(c) of the Bankruptcy Code provides that a debtor in possession "may enter into transactions . . . in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1).

13. The Debtor intends, upon the Court's authorization, to obtain post-petition unsecured credit by continuing to utilize the Amex Account. The Debtor's use of the Amex Account is an ordinary course practice,[4] and therefore any unsecured debt incurred in connection with the Debtor's revolving line of credit would be an allowable administrative expense under 11 U.S.C. § 503(b)(1). *See* 11 U.S.C. § 364(a); *see also In re Cowin*, No. 13-30984, 2014 WL 1168714, at *40-43 (Bankr. S.D. Tex. March 21, 2014) (examining transactions in the ordinary course of business).

14. Further, the Debtor intends to pay for the expenses associated with the revolving line of credit under the Amex Account with property of the Estate in the ordinary course of business pursuant to 11 U.S.C. § 363(c)(1), which grants the Debtor such authority without the

---

[4] The ordinary course status of the Debtor's use of the Amex Account is discussed in detail in Subsection C below (¶¶ 18-25).

need for notice and a hearing. *See* 11 U.S.C. § 363(c)(1). The $25,000 Amex Account revolving credit limit falls within the Debtor's DIP financing budget. *See* [DIP order].

B. Prepetition Amex Account balance roll-up.

15. Section 105(a) of the Bankruptcy Code and the doctrine of necessity support the authorization of the Debtor's post-petition roll-up of its prepetition Amex Account balance. Section 105(a) of the Bankruptcy Code provides that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Moreover, the Court may authorize the payment of prepetition claims in appropriate circumstances under 11 U.S.C. § 105(a) and the doctrine of necessity when such payment is essential to the continued operation of a debtor's business. *See Babcock & Wilcox Co. v. Babcock & Wilcox Co.*, 274 B.R. 230, 256 n. 208 (Bankr. E.D. La. 2002) ("The so-called 'doctrine of necessity' or 'necessity of payment rule' permits bankruptcy courts in limited circumstances to authorize payment of prepetition claims 'if such payment [is] essential to the continued operation of the debtor.'").

16. Accordingly, the Bankruptcy Code authorizes the post-petition payment of prepetition claims where, as here, such payments are critical and necessary to preserving the going concern value of the Debtor's estate. Authorizing the Debtor to use property of the Estate to pay the prepetition balance owed to Amex is necessary and appropriate to carry out the provisions of 11 U.S.C. §§ 363(c)(1) and 364(a). Specifically, the Debtor will be unable to use property of the Estate to obtain post-petition unsecured credit from Amex and incur unsecured debt in the ordinary

course of its business without an order of the Court authorizing the Debtor's payment of its prepetition balance owed to Amex.[5]

17. Moreover, the Debtor's continued use of its Amex Account is essential to the continued operation of its business in the ordinary course. Indeed, without the ability to purchase fuel, galley, and other supplies, the Debtor faces the added risk of being unable to perform services and maintain its fleet, all of which would prove detrimental to the Debtor's reorganization efforts. Further, the Debtor's use of its Amex Account provides it with the ability to purchase necessary supplies and equipment on weekends when it otherwise would be unable to do so, as well as when the Debtor does not have credit terms established with certain vendors. As a result, authorization of the post-petition roll-up of the Debtor's prepetition Amex Account balance is necessary and appropriate, as it is essential to the continued operation of the Debtor. *See Babcock & Wilcox Co.*, 274 B.R. at 256 n. 208.

C. Waiver of Chapter 5 Causes of Action.

18. Chapter 5 of the Bankruptcy Code provides, in part, various vehicles for a debtor in possession to avoid or affect certain transfers of the Debtor's property for the benefit of the estate, as well as certain limitations on the exercise of these powers. *See generally* 11 U.S.C. §§ 541-562. Amex, as a condition precedent to the Debtor's ability to continue incurring unsecured debt under its Amex Account post-petition, has requested that the Debtor waive its right to prosecute any Chapter 5 Causes of Action to the extent such causes of action exist. The Debtor submits that the Chapter 5 Causes of Action are defensible (and so prosecuting them would not

---

[5] Absent an order of the Court granting the relief requesting herein, employees of the Debtor could be required, either by nature of the terms governing the Amex Account or by a separate agreement related to the same, to incur personal obligations on behalf of the Debtor and later seek reimbursement from the Debtor.

benefit the estate), and the waiver is consistent with the doctrine of necessity and analogous relief, such as assumed contracts under section 365 and post-petition financing terms.

19. Each of the Amex Transfers as described above amount to "payment of a debt incurred by the debtor in the ordinary course of business" and were "made in the ordinary course of business . . . of the debtor and the transferee." 11 U.S.C. § 547(c)(2)(A). Specifically, the Debtor's practice of transferring funds to Amex monthly, and sometimes more frequently, in satisfaction of its debt incurred to obtain supplies and gear essential to the continued operation of its business constitutes an ordinary course business practice. *See* 11 U.S.C. § 547(c)(2)(A). To determine whether a transaction is made in the ordinary course of business, courts generally employ two tests.

20. The first test looks to the creditor's expectations, meaning that "'one views the disputed transaction from the creditor's vantage point and inquires whether the creditor would expect notice and hearing on the contemplated transaction.'" *In re Cowin*, 2014 Bankr. LEXIS 1119, at *127 (quoting *In re Media Cent., Inc.*, 115 B.R. 119, 123-24 (Bankr. E.D. Tenn. 1990)). "'If the transaction is an ordinary one in the debtor's business operation, the creditor would not expect notice and opportunity to object because the creditor is well aware the debtor-in-possession has been authorized by the Code to operate its business in the usual manner from day to day.'" *Id.* at 127-28. If, "'[o]n the other hand, . . . the contemplated transaction is unusual, not of the ordinary, the type of transaction that might be considered controversial or questionable for the debtor to undertake during its Chapter 11 case, the creditors would expect'" notice and the ability to object. *Id.* at 128.

21. The *In re Cowin* court examined a transaction wherein a debtor, whose business was the development of real estate, acquired fully-developed real estate by the surrender of a note.

The court determined that this was a transaction "distinctly **outside** the ordinary course of the [d]ebtor's business" under the first test, reasoning that the debtor did not present any "evidence that any of his creditors would have expected him to acquire Unit 320 by surrendering the 2010 Note and incurring more debt through the execution and delivery to MELP of the $52,880 Note." *Id.* at 134 (emphasis in original). Here, unlike the debtor in *In re Cowin*, it is likely that the Debtor's creditors would expect it, while continuing to operate its business, to purchase necessary supplies for its crew and fleet, as well as to continue making payments toward its outstanding balance so that it could continue to utilize its Amex Account.

22. Further, the Debtor's timely payment of its Amex Account balance prepetition is a prime example of the type of day-to-day transaction that a creditor would not expect notice and an opportunity to object to. Moreover, there is nothing unusual, out of the ordinary, or the least bit controversial or questionable about the Debtor's decision to sure up its Amex Account balance in a timely manner for the purpose of purchasing necessary supplies for the continued operation of its business. As a result, the first test strongly indicates that any transfers that may be within the preference period under 11 U.S.C. § 547 would constitute ordinary course transactions.

23. The second test compares "'the debtor's business with like businesses to ascertain whether the disputed transaction is ordinary for the particular type of business concerned.'" *Id.* (quoting *In re Media Cent., Inc.* 115 B.R. at 124). Specifically, the second test asks whether "'the postpetition transaction is of a type that other similar businesses would engage in as ordinary businesses business.'" *Id.*

24. The *In re Cowin* court also determined that the debtor's acquisition of fully-developed real estate, as described above, was an atypical transaction under the second test, reasoning that "there are no real estate businesses whose mission is to acquire a homestead through

settlement of litigation and the surrender of a note receivable." *Id.* at 135. Here, unlike the debtor in *In re Cowin*, the Debtor's payment of its Amex Account balances as they came due—an account maintained for the provision of supplies necessary to the operation of the Debtor's crew and vessels—is neither atypical, nor an indication that the Debtor engaged in transactions outside of the scope of the particular type of business it is engaged in.

25. Therefore, even though the Amex Transfers are not likely avoidable under 11 U.S.C. § 547(b) under either "ordinary course of business" test utilized by courts, in an abundance of caution, and to assure Amex of its continued right to the funds constituting the Amex Transfers, the Debtor wishes to waive any causes of action arising under 11 U.S.C. § 547.[6]

26. Additionally, none of the Amex Transfers were made with the intent to hinder, delay, or defraud creditors. Further, each of the Amex Transfers constituted the Debtor's receipt of reasonably equivalent value through satisfaction of an antecedent debt. *See* 11 U.S.C. §§ 548(a), (d). Therefore, none of the Amex Transfers would give rise to a cause of action under 11 U.S.C. § 548(a). *See* 11 U.S.C. §§ 548(a), (d). Even so, the Debtor seeks authorization to waive any potential causes of action arising under 11 U.S.C. § 548.

27. Again, 11 U.S.C. § 105(a) provides that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). An order authorizing the Debtor to waive its right to prosecute any Chapter 5 Causes of Action as described herein is necessary and appropriate to carry out the provisions of the Bankruptcy Code, specifically sections 363 and 364 which, together, allow the Debtor to exercise

---

[6] The Debtor further submits that the "subsequent new value" defense under 11 U.S.C. § 547(c)(4) applies as defenses to the Chapter 5 Causes of Action.

its ability to obtain unsecured credit and incur unsecured debt postpetition in the ordinary course of business.

D. Waiver of Rule 6004(h) stay of relief.

28. The relief requested herein is necessary to avoid immediate and irreparable harm to the Debtor, thus justifying the Court's waiver of the 14-day stay pursuant to Federal Rule of Bankruptcy Procedure 6004(h). Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, *unless the court orders otherwise*." Fed. R. Bankr. P. 6004(h) (emphasis added). Since the Debtor's inability to obtain postpetition unsecured credit from Amex and incur postpetition unsecured debt would halt the Debtor's ability to purchase supplies necessary to the continued operation of its business, thus resulting in immediate and irreparable harm to the Debtor, ample cause exists to justify the Court's waiver of the 14-day stay imposed by Rule 6004(h) to the extent such stay applies.

E. Reservation of Rights.

29. Nothing herein constitutes a waiver of any right of the Debtor under applicable law to contest the validity or amount of any debt or claim.

**WHEREFORE**, the Debtor respectfully requests an order (i) authorizing the Debtor to obtain postpetition unsecured credit in the ordinary course of business from, and incur postpetition unsecured debt with, Amex and to pay obligations arising therefrom in the ordinary course of business, (ii) authorizing and directing the Debtor to pay the prepetition balance of $2,733.38 posted to its Amex Account, (iii) authorizing and directing the Debtor to waive any potential avoidance actions arising under chapter 5 of the Bankruptcy Code solely with respect to any and

all Amex Transfers, (iv) waiving the 14-day stay pursuant to Rule 6004(h), and (v) granting such other relief the Court deems just and appropriate.

        Respectfully Submitted,

        **STEWART ROBBINS BROWN & ALTAZAN, LLC**
        301 Main Street, Suite 1640
        P. O. Box 2348
        Baton Rouge, LA 70821-2348
        (225) 231-9998 Telephone
        (225) 709-9467 Fax

By:    /s/ *Brandon A. Brown*
        Paul Douglas Stewart, Jr. (La. #24661)(T.A.)
        dstewart@stewartrobbins.com
        Brandon A. Brown (La. #25592)
        bbrown@stewartrobbins.com
        Brooke W. Altazan (La. #32796)
        baltazan@stewartrobbins.com

        ***Counsel for Offshore Marine Contractors, Inc.***

# EXHIBIT A
# 90-DAY TRANSFERS

**Transfers to Amex Within 90 Days Prepetition**

| Transfer Date | Amount Transferred |
|---|---|
| 9/19/2019 | $14,000.00 |
| 11/1/2019 | $10,000.00 |
| 11/6/2019 | $16,162.37 |
| 11/20/2019 | $15,000.00 |
| 12/3/2019 | $22,000.00 |
| **Total** | **$77,162.37** |